William STALLNACKER *v.* STATE of Arkansas

CA CR 86-68                                                      715 S.W.2d 883

Court of Appeals of Arkansas
Division II
Opinion delivered September 24, 1986

*Ray A. Waters, Jr.,* and *Fred M. Pickens, Jr.,* for appellant.

*Steve Clark,* Att'y Gen., by: *Lee Taylor Franke,* Asst. Att'y Gen., for appellee.

LAWSON CLONINGER, Judge. Appellant, William H. Stallnacker, was charged with raping his daughter on November 25, 1983, in violation of Ark. Stat. Ann. § 41-1803 (Supp. 1985). A jury found him guilty and sentenced him to a term of ten years imprisonment.

The sole issue in this appeal is whether the trial court erred in

admitting a physician's testimony that the alleged victim told the physician that her father, appellant, had intercourse with her. Appellant contends that the doctor's testimony was hearsay not excepted by Rule 803(4) of the Arkansas Uniform Rules of Evidence. We do not agree, and we affirm the judgment of the court below.

Appellant argues that the trial court erred in permitting Dr. Janet Cathey, an examining physician who specializes in obstetrics and gynecology, to testify that appellant's twelve-year-old daughter had said, when asked whether she had ever had sexual intercourse, "Only when my father made me." Such a statement, appellant asserts, cannot be considered an exception to the hearsay rule under URE Rule 803(4) because the identification of appellant had no bearing on his daughter's medical history or treatment.

■ Rule 803(4) of the Arkansas Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), provides an exception to the hearsay rule for

> Statements made for the purpose of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

The child had been admitted to the emergency room at University Hospital in Little Rock for low abdominal pain. Dr. Cathey saw her in her capacity as a gynecological consultant and sought a menstrual and sexual history "because," she said, "there are certain diseases that can cause pain in young women that are not possible unless the woman has had intercourse before." The relevance of the physician's inquiry is clear.

Appellant concedes that, for the purposes of Dr. Cathey's examination, it may have been relevant that his daughter had had sexual intercourse. He insists, however, that the identification of the person with whom she had sexual relations was not relevant to her medical history. To support his thesis, appellant cites *Shields v. State*, 281 Ark. 420, 664 S.W.2d 866 (1984), for dicta suggesting disapproval by the Arkansas Supreme Court of the admission by a trial court of testimony by a psychologist offering

an opinion that children she had interviewed truthfully stated that they had been molested by their stepfather. Apart from the fact that the physician in the present case offered no opinion on the veracity of the child's statement implicating her father in the crime of rape, *Shields* is inapplicable because the Supreme Court never reached the issue of admissibility, as it had not been preserved for appeal.

The Eighth Circuit Court of Appeals has recently ruled on this issue. In *United States* v. *Renville*, 779 F.2d 430 (8th Cir. 1985), the defendant also argued that the hearsay exception embodied in Fed. R. Evid. 803(4), the test of which is identical to the Arkansas rule, did not encompass statements of fault or identity made to medical personnel. The Eighth Circuit noted that the central question under Rule 803(4) is "whether the out-of-court statement of the declarant was 'reasonably pertinent' to diagnosis or treatment."

Although acknowledging that they had recognized in *United States* v. *Iron Shell*, 633 F.2d 77 (8th Cir. 1980), *cert. denied*, 450 U.S. 1001 (1981), that a declarant's statements disclosing the identity of the person said to be responsible for his injuries "would seldom, if ever," be reasonably pertinent to treatment or diagnosis, the Eighth Circuit saw a distinguishing factor in cases such as *Renville, supra*:

> We believe that a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of rule 803(4) that it should not fall under the general rule. Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment. [Emphasis in original.] *Renville*, at 436.

Statements of identification in child abuse cases, the court said, are "reasonably relied on by a physician in treatment or diagnosis." *Id.*, at 437. In the first place, child abuse extends further than physical injury, and the "physician must be attentive to treating the emotional and psychological injuries which accompany this crime." *Id.* The psychological impact upon the

child in the instant case is of special importance, inasmuch as the mother of the child testified that the doctors at University Hospital testified that the source of the abdominal pain was nerves.

Prevention of recurrence of the injury is a paramount consideration in the treatment of children who have been sexually abused in the home. This is not, however, merely an aspect of medical or psychological treatment. As the Eighth Circuit put it, "physicians have an obligation, imposed by state law [Ark. Stat. Ann. § 42-808 (Repl. 1977) is cited by the court in a footnote as an example], to prevent an abused child from being returned to an environment in which he or she cannot be adequately protected from recurrent abuse. This obligation is most immediate where the abuser is a member of the victim's household, as in the present case." *Id.*, at 438. The court therefore concluded that information that the abuser is a household member is " 'reasonably pertinent' to a course of treatment which includes removing the child from the home." *Id.*

In the instant case, moreover, testimony was given without objection by appellant's daughter concerning the conversation with the physician that corresponded to the doctor's account. The child's mother, a defense witness, confirmed on direct testimony that she was informed at University Hospital that her daughter had stated that her father had sexually abused her. We do not see how Dr. Cathey's testimony could have done any greater harm than that of the other witnesses who testified without objection.

Affirmed.

CORBIN and MAYFIELD, JJ., agree.