735 P.2d 801

The STATE of Arizona, Appellee,

v.

Michael Eugene ROBINSON, Appellant.

No. CR–86–0076–PR.

Supreme Court of Arizona,
En Banc.

April 7, 1987.

194

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Galen H. Wilkes, Phoenix, for appellee.

Elledge & Kelliher, P.C. by John F. Kelliher, Jr., Sierra Vista, for appellant.

FELDMAN, Vice Chief Justice.

A jury convicted defendant, Michael Eugene Robinson, of two counts of sexual conduct with a minor and two counts of child molestation. *See* A.R.S. §§ 13–1405, –1410. Robinson was sentenced to consecutive maximum terms of fourteen years for each count. The court of appeals affirmed the convictions and sentences. *State v. Robinson*, 153 Ariz. 188, 735 P.2d 798 (App. 1986). We accepted review to examine three questions: (1) whether A.R.S. § 13–1416 (Supp.1986), a statutory hearsay exception, unconstitutionally infringes on this court's rulemaking powers; (2) whether the challenged hearsay statements could have been admitted under the Arizona Rules of Evidence; and (3) whether the imposition of consecutive sentences violated A.R.S. § 13–604(H). Rule 31.19(c)(4), Ariz.R. Crim.P., 17 A.R.S. (Supp.1986). We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4035.

## I. FACTS

Robinson's primary argument challenges hearsay statements admitted pursuant to A.R.S. § 13–1416. A good deal of the evidence against Robinson, however, is not hearsay or is not challenged. We review this evidence before turning to the challenged evidence.

In 1984, Robinson lived with his family in Huachuca City, Arizona. He had two children, Cari, an eight-year-old stepdaughter, and Robert, age four. While his wife worked at Fort Huachuca, Robinson babysat his children and two neighborhood children, Nicole, age five, and Amy, age three.

On August 22, 1984, Nicole complained to her mother at breakfast that her vagina hurt. Nicole's mother discovered blood on Nicole's panties and a bruise on her labia. When asked what had happened, Nicole said Cari had poked her with a pencil. Asked if she had told Robinson what had happened, Nicole responded that she had, but that Robinson had only laughed. Nicole's mother then went to Robinson's trailer and asked about the incident. Robinson said he did not know what Nicole was talking about, but he then went to Nicole's trailer and told Nicole to tell her mother that "I didn't know nothing about it." Nicole then said, "Mommie, I lied, I didn't tell Mike."

Nicole's grandmother, a registered nurse, arrived and she too examined Nicole. Although she did not think the injury serious, she suggested that she and Nicole's mother take Nicole to their employer, Dr. Kroft, for examination. Before they left, Robinson told Nicole's mother, "I didn't touch [Nicole]. I promise, I didn't touch her. I don't know what happened." During the course of that day, Robinson made other statements denying that he had done anything to Nicole. He also called Nicole's mother at work four or five times to inquire about Nicole's condition and the doctor's examination. Robinson's denials were not prompted by accusations of wrongful conduct.

Dr. Kroft's examination revealed a nickel-sized bruise on Nicole's labia minora and a tear in her forchette, the area at the bottom of the vaginal opening. Dr. Kroft testified that these injuries were inconsistent with being poked with a pencil, but were consistent with simulated intercourse.

■ Robinson was charged with having improper sexual contact with Nicole and his stepdaughter, Cari. Cari testified via videotape at Robinson's trial, stating that Robinson did "nasty stuff" to her and Nicole on two occasions.[1] On the first occasion, according to Cari, Robinson told Cari and Nicole to come into the bedroom with him. He then closed the door and told the girls to take off their clothes and get in bed. Cari testified that Robinson then took his clothes off and "put his weewee in my mouth" until "yucky stuff came out." Cari then got off the bed and Robinson did the same thing to Nicole. Cari testified that on the second occasion, she, Nicole, Amy, and Robert were all in the bedroom. Robinson again told Cari and Nicole to undress and get in bed. Then, Cari testified, Robinson "put his weewee in where it counts—in my private parts" and moved up and down. Cari then left the bed and Robinson did the same thing to Nicole. Robinson told Cari "don't tell nobody about it" or "I would get in trouble and Nicki would too." When asked if she had ever poked Nicole with a pencil, Cari said, "Not really, Nicki even told her mom that I didn't really do it. She was just scared."

In addition to Cari's testimony, the state presented testimony from Dr. Davis, the psychologist treating Nicole. She explained traumatic stress disorder, and testified that she had diagnosed Nicole as suffering acute post-traumatic stress disorder. Dr. Davis identified the relevant stressor as sexual abuse. She also testified that Nicole's behavioral changes—nightmares, wetting the bed, anger, inconsistent stories of the alleged events—were consistent with sexual abuse having occurred.[2]

Nicole did not testify at Robinson's trial. She had attempted to testify at Robinson's previous trial, which ended in a hung jury. The judge presiding at the second trial found Nicole legally "unavailable" to testify due to an existing mental infirmity.[3] See Rule 804(a)(4), Ariz.R.Evid., 17A A.R.S.[4] Because Nicole's in-court testimony was unavailable, four of her out-of-court statements were introduced at trial pursuant to A.R.S. § 13–1416. Robinson challenges the introduction of · these statements.

Dr. Kroft, Nicole's physician, testified that as she was preparing to swab Nicole's mouth to obtain a culture, Nicole said, "Mike put his weenee in there." Dr. Davis also testified that Nicole said Mike, her babysitter, had kissed her and placed his penis in her "privates" and in her mouth.

Danielle Parr also testified at trial. Danielle, a twelve-year-old, agreed to babysit Nicole on August 22 after Nicole was examined by Dr. Kroft. Danielle did not know why Dr. Kroft had examined Nicole. When she asked, Nicole said Cari had "poked a pencil up her butt." Nicole drew three pictures while she was with Danielle. Without any prompting by Danielle, Nicole explained that the pictures were, respectively, "a weenee ... with white stuff coming out," a picture of herself, nude, "when Mike was going to play a game ... with [me]," and a picture of Mike smiling.

Nicole's permanent babysitter, Carol Decker, testified about an incident that occurred on September 18, 1984. According to Ms. Decker, Nicole had gone across the street to play with a neighbor. The neighbor's mother saw Nicole put something in her mouth and asked her to open her mouth. Nicole refused to open her mouth and began crying. She then ran back to her trailer and jumped in Ms. Decker's lap.

---

1. Robinson did not challenge the admissibility of Cari's testimony. We note, however, that admitting Cari's testimony did not violate Robinson's confrontation-clause rights because Robinson was present during Cari's testimony and his attorney cross-examined Cari. See State v. Melendez, 135 Ariz. 390, 392–93, 661 P.2d 654, 656–57 (App.1982); Note, The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations, 98 HARV.L.REV. 806, 822–24 (1985).

2. The issues raised in State v. Moran, 151 Ariz. 378, 728 P.2d 248 (1986) are not before us in this case.

3. Whether this determination met the requirements of the confrontation clause is examined in section II–C.

4. The Arizona Rules of Evidence will be cited as Rule —— throughout this opinion.

Nicole was sobbing and hyperventilating; it took Ms. Decker about twenty minutes to calm her. When Nicole did calm down, Ms. Decker asked her what was wrong.

> I said, "Nicki, what's wrong. Why are you crying like this?" And she kept crying for a few minutes, and then calmed down, and then she told me that [the neighbor's] mother wanted her to open her mouth. And I said, "why?" And she said, "because I put something in my mouth." And I said, "well, why wouldn't you open your mouth," and she said, "I can't anymore." I said, why?" "Because it's bad." And I said, "what do you mean it's bad?" And she said, "because of what Mike did," and I said, "well, what did Mike do?" And she said, "he put his thing in my mouth."

Robinson testified in his own defense. He denied touching or molesting Nicole or Cari and he recounted, in remarkable detail, his actions on the days the crimes allegedly occurred. He also denied telling Nicole's mother that he had not touched Nicole.

## II. HEARSAY TESTIMONY

The testimony of Dr. Kroft, Dr. Davis, Danielle Parr, and Carol Decker relating Nicole's out-of-court statements was hearsay. Rule 801. Hearsay is admissible only if it falls within a recognized exception. Rule 802. In this case, the trial court admitted Dr. Davis's testimony under A.R.S. § 13–1416 *and* as a "statement[] for purposes of medical diagnosis or treatment." Rule 803(4). The other three hearsay statements were admitted pursuant to A.R.S. § 13–1416, which provides:

> A. A statement made by a minor who is under the age of ten years describing any sexual offense performed with or on the minor by another person or any act of physical abuse of the minor, *which is not otherwise admissible by statute or court rule,* is admissible in evidence in any criminal or civil proceeding if *both* of the following are true:

> 1. The court finds, in an in camera hearing, that the *time, content and circumstances of the statement provide sufficient indicia of reliability.*

> 2. *Either* of the following is true:

> (a) The minor *testifies* at the proceedings.

> (b) The minor is *unavailable* as a witness, provided that if the minor is unavailable as a witness, the statement may be admitted only if there is *corroborative evidence of the statement.*

> B. A statement shall not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement.

(emphasis added).[5]

Robinson challenges the hearsay statements admitted against him on several grounds. He first argues that A.R.S. § 13–1416 unconstitutionally infringes on this court's authority to make procedural rules—specifically, the Arizona Rules of Evidence. Robinson then recognizes, as he must, that even if A.R.S. § 13–1416 is unconstitutional, the trial court's decision to admit the hearsay statements under the statute was harmless if the statements could have been admitted under the rules of evidence. *See* M. UDALL & J. LIVERMORE, LAW OF EVIDENCE § 13, at 22 (2d ed. 1982). Robinson's second argument, therefore, is that the statements also were inadmissible under the rules of evidence. Robinson's final argument is that admission of the hearsay statements violated his sixth amendment right to confront witnesses against him. We consider each of these arguments in turn.

### A. Does A.R.S. § 13–1416 Unconstitutionally Infringe on the Supreme Court's Rulemaking Authority?

#### 1. General Principles

The legislature's authority to modify the rule against hearsay, *see* Rule 802, or the

---

**5.** The legislature amended A.R.S. § 13–1416 as Robinson's case proceeded. None of the amendments affects our analysis. We have quoted the most recent version of the statute.

exceptions contained in Rules 803 and 804, is limited by two important, related principles. First, this court promulgated the rules of evidence pursuant to our exclusive constitutional authority "to make rules relative to all procedural matters in any court." Ariz.Const. art. 6, § 5(5); *see Readenour v. Marion Power Shovel*, 149 Ariz. 442, 444, 719 P.2d 1058, 1060 (1986); *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 590, 691 P.2d 678, 681 (1984). Consequently, A.R.S. § 13–1416 is unconstitutional if it conflicts with or "tends to engulf" the rules of evidence. *Seidel*, 142 Ariz. at 591, 691 P.2d at 682. Under our constitution, "[t]he legislature cannot repeal the Rules of Evidence...." *Id.*

Second, the hearsay rules, in conjunction with the confrontation clauses of the state and federal constitutions, go to the heart of the judicial process: they strike a balance between the search for evidence that furthers the truth-finding process and the accused's right to probe the reliability of that evidence through confrontation and cross-examination. *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (hearsay rules and the confrontation clause "protect similar values" and "stem from the same roots"). The balance struck by the current hearsay rules implicates fundamental judicial and constitutional values and processes. Article 6, § 5(5) vests this court with the responsibility of maintaining and refining this balance.

Although we have previously recognized consistent statutory additions to the rules of evidence, *Seidel, supra, Readenour, supra,* the reach of our rulemaking authority and the function of the hearsay rules, taken together, severely limit the legislature's authority to manipulate the hearsay rules, particularly in criminal cases where confrontation rights are constitutionally protected. Unlike the rules affected by the statutes at issue in *Seidel* or *Readenour*, the hearsay rules are at the core of the

judicial function: defining what is reliable evidence and establishing judicial processes to test reliability. Under basic separation of powers principles, these judicial functions are separate and different from legislative powers. As Professor Wigmore long ago explained, "the judicial power involves the application of the law to concrete facts and, therefore, the investigation and establishment of the facts. Any statute which prevents the judicial body from ascertaining the [true] facts [in the case before it] ... is ineffective." J. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 7, at 213 (3d ed. 1940). These same principles have been endorsed by Justice Cameron. Cameron, *The Place for Judicial Activism on the Part of the State's Highest Court*, 4 HASTINGS CONST.L.Q. 279, 288 (1977).

■ As our prior discussion indicates, § 13–1416 is subject to exacting scrutiny and is constitutional only if it can be interpreted as consistent, in letter and spirit, with the rules of evidence. *See Seidel*, 142 Ariz. at 591, 691 P.2d at 682.[6] Rules 803 and 804 contain twenty-seven specific hearsay exceptions and two residual, "catchall," exceptions. The purpose of these exceptions is to admit trustworthy hearsay statements—those supported by "particularized guarantees of trustworthiness"—that will further the truth-finding process. *See generally* E. CLEARY, McCORMICK ON EVIDENCE § 245, at 728, § 253, at 753 (3d ed. 1984); Rules 803(24), 804(b)(5). Statutory hearsay exceptions, therefore, are unconstitutional unless they require similar or equivalent "guarantees of trustworthiness."

If A.R.S. § 13–1416 permits admission of hearsay that lacks the indicia of reliability required by the rules, or, alternatively, prohibits admission of hearsay that meets the rules' reliability standards, then it necessarily contradicts the rules and is therefore an unconstitutional infringement of our

---

6. Rule 802 and *State v. Ryan*, 103 Wash.2d 165, 691 P.2d 197 (1984) are not to the contrary. *Ryan* upheld a statute nearly identical to A.R.S. § 13–1416 against a rulemaking challenge on the basis that Rule 802 contemplates statutory exceptions to the rule against hearsay. We agree with *Ryan*, but believe it is premised on the unarticulated assumption that any new statutory exceptions will be consistent with the purpose of the hearsay exceptions set out in Rules 803 and 804.

rulemaking authority. If the statute is less or more restrictive than the rules, the legislature is attempting to dictate what is or is not reliable evidence, and when cross-examination may be necessary to test reliability. These are judicial determinations, which, under art. 6, § 5(5), are the exclusive province of this court.

### 2. Does A.R.S. § 13–1416 Supplement or Contradict the Rules of Evidence?

At first blush, it is not clear whether A.R.S. § 13–1416 is consistent with the hearsay exceptions set out in the rules. Although the purpose of A.R.S. § 13–1416 obviously is to set guidelines for determining the admissibility of child hearsay statements in sexual and physical abuse cases, the statutory language does not clearly indicate whether the legislature intended its guidelines to be more or less restrictive than, or merely redundant with, the rules.

On one hand, portions of the statute are actually *more* restrictive than the rules of evidence. For example, even if the child testifies at trial, the statute requires her prior hearsay statements to be supported by "sufficient indicia of reliability." Under the rules, if the victim testifies, her prior statements often are not considered hearsay and are admissible as substantive evidence either without regard to reliability or with only a minimal showing of reliability. *See* Rule 801(d)(1); *State v. Moran*, 151 Ariz. 373, 375–76, 728 P.2d 243, 245–46 (App.1985) (reliability of prior statement can be tested at trial by cross-examining declarant), *aff'd in relevant part, rev'd in part*, 151 Ariz. 378, 728 P.2d 248 (1986). Even if the witness's prior statements are considered hearsay, they are usually admissible under the "catchall" provisions of Rule 803(24). 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 803(24)[01], at 803–375 (1985) (courts often admit hearsay under 803(24) if declarant testifies at trial); *United States v. Renville*, 779 F.2d 430, 440 (8th Cir.1985).

Another example of the statute's more restrictive terms is the requirement of "corroborative evidence of the statement" if the minor is unavailable to testify. Neither the rules nor the confrontation clause of the federal or state constitutions require corroboration *in addition* to "sufficient indicia of reliability." *See post* sections II–B, II–C.

On the other hand, other portions of the statute suggest that the legislature intended § 13–1416 to expand on the rules. By its own terms, the statute purports to apply only to child hearsay "not otherwise admissible by statute or court rule...." This language suggests that courts are to consider admissibility under A.R.S. § 13–1416 only if the hearsay is *inadmissible* under the rules of evidence. *See, e.g., State v. Superior Court*, 149 Ariz. 397, 402, 719 P.2d 283, 288 (App.1986).

■ Given their plain meaning, the statutory provisions summarized above are contradictory. The statute purports to "supplement" the hearsay rules, yet it is more restrictive than those same rules. Because we cannot assume that the legislature intended to enact a useless statute, *see State v. Cassius*, 110 Ariz. 485, 487, 520 P.2d 1109, 1111 (1974),[7] we are forced to conclude that the legislature intended A.R.S. § 13–1416 to be used exactly as it was in this case: as a replacement for the analytical framework provided by the rules of evidence. Section 13–1416 thus conflicts with and "engulfs" the rules of evidence, impermissibly infringing on this court's constitutional authority to make procedural rules for the judiciary. *Seidel*, 142 Ariz. at 591, 691 P.2d at 682. It does this in an area going to the very essence of the truth-seeking process and in cases in which constitutional protections apply. We therefore hold § 13–1416 unconstitutional. Henceforth, the admissibility of child hearsay statements should be determined under the rules of evidence.

**7.** Principles of statutory construction also require us to construe the "statute, *if possible*, ... so that it does not violate the constitution." *Readenour*, 149 Ariz. at 445, 719 P.2d at 101

(emphasis added). This principle must give way, however, if the constitutional interpretation renders the statute meaningless.

**B.** *Admissibility Under the Rules of Evidence*

▮ Our construction of A.R.S. § 13–1416 shifts the inquiry in this case to whether the hearsay statements at issue were admissible under the rules of evidence. If the statements were admissible under the rules, it is irrelevant that they were admitted pursuant to A.R.S. § 13–1416. We may affirm on any basis supported by the record. M. UDALL & J. LIVERMORE, *supra* § 13, at 22.

**1.** *Rule 803(4)—Statements for Medical Purposes* [8]

**a.** *Statements Describing the Crime*

▮ Hearsay statements made to further medical diagnosis or treatment may be admissible under Rule 803(4). Some of Nicole's statements to Dr. Davis, her treating psychologist,[9] were admitted pursuant to both A.R.S. § 13–1416 and Rule 803(4). Dr. Davis was allowed to testify that during evaluation and treatment sessions Nicole said that "Mike," her "babysitter," "french-kissed her," which Nicole described as "him putting his tongue" in her mouth. Nicole also told Dr. Davis that Robinson put "his weenee" in her "privates,"[10] and in her mouth.

▮ The rationale underlying the Rule 803(4) exception for statements made for purposes of treatment or diagnosis is that doctors will seek and patients will give reliable information to further necessary medical treatment. *See United States v. Iron Shell*, 633 F.2d 77, 83–84 (8th Cir. 1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); 4 J. WEINSTEIN & M. BERGER, *supra* ¶ 803(4)[01], at 803–144 to 146. Thus, the "crucial question under the rule" is whether the declar-

ant's out-of-court statements were " 'reasonably pertinent' to diagnosis or treatment." *Renville*, 779 F.2d at 436. In *State v. Jeffers*, 135 Ariz. 404, 420–21, 661 P.2d 1105, 1121–22, *cert. denied*, 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983), we announced a two-part test to aid in deciding whether the proffered statements were reasonably pertinent to diagnosis or treatment: (1) was the declarant's apparent "motive ... consistent with receiving medical care;" and (2) was it "reasonable for the physician to rely on the information in diagnosis or treatment." *Id.* (citing *Iron Shell*, 633 F.2d at 84).

Because of their young age, sexually abused children may not always grasp the relation between their statements and receiving effective medical treatment. It is particularly important, therefore, to ask whether the information sought by the treating doctor was reasonably pertinent to effective treatment. In this case, the record demonstrates Dr. Davis's reliance on and need for the information she obtained from Nicole. Dr. Davis testified that the cause of Nicole's injuries and the identity of her abuser were critical to effective diagnosis and treatment.

▮ The record is not as clear regarding Nicole's motive in making the challenged statements. The record does indicate, however, that Nicole's statements were elicited in the course of treatment. And nothing in the record indicates that Nicole's "motive in making these statements was other than as a patient seeking [or at least needing] treatment." *Iron Shell*, 633 F.2d at 84; *see also Renville*, 779 F.2d at 439; *State v. Reidhead*, 146 Ariz. 314, 317, 705 P.2d 1365, 1368 (App.1985) (Hathaway, J., dissenting). Furthermore, the reliability of Nicole's statements is bolstered by her un-

---

**8.** Rule 803(4) provides:

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

**9.** Dr. Davis is a certified psychologist. *See* A.R.S. § 32–2071. She was treating Nicole for

well-established psychological problems resulting from sexual abuse. *Cf.* A.R.S. § 32–2084 (psychologists are authorized to "diagnose, treat and correct human conditions ordinarily within the scope of the practice of a psychologist"). We therefore conclude that Dr. Davis was treating Nicole for "medical" purposes as required by Rule 803(4).

**10.** Nicole explained these terms verbally and using anatomically correct dolls.

usual knowledge of sexual matters, her child-like terminology, and her physical and emotional injuries. *See post* at 201–202, 735 P.2d at 811–812. Considering all the circumstances, Nicole's statements to Dr. Davis meet the requirements of Rule 803(4) and *Jeffers, supra. See Renville,* 779 F.2d at 436–39.

### b. *Statements Describing the Criminal*

We recognize that the identity of the victim's assailant and other statements attributing fault ordinarily are inadmissible under Rule 803(4) because identity and fault usually are not relevant to diagnosis or treatment. *E.g., Jeffers,* 135 Ariz. at 421, 661 P.2d at 1122. For example, although it is usually important to know if the victim was hit by an automobile, it is irrelevant, for medical purposes, that the automobile ran a red light. Federal Advisory Committee's Note to Rule 803(4).

This general rule, however, is inapplicable in many child sexual abuse cases because the abuser's identity *is* critical to effective diagnosis and treatment. *Renville,* 779 F.2d at 436–37; *State v. Aguallo,* 318 N.C. 590, 594, 350 S.E.2d 76, 80–81 (1986). Unlike, for example, the identity of the person who administered a narcotic to the victim in *Jeffers,* 135 Ariz. at 421, 661 P.2d at 1122, it matters who abused Nicole. Dr. Davis's testimony in this case echoed the conclusion reached by numerous courts: "The exact nature and extent of the psychological problems which ensue from child [sexual] abuse often depend on the identity of the abuser." *Renville,* 779 F.2d at 437; *see also Aguallo,* 318 N.C. at 594, 350 S.E.2d at 80; *Reidhead,* 146 Ariz. at 318–19, 705 P.2d at 1369–70 (Hathaway, J., dissenting). The psychological sequelae of sexual molestation by a father, other relative, or family friend may be different and require different treatment than those resulting from abuse by a stranger. *People v. Wilkins,* 134 Mich.App. 39, 45, 349

N.W.2d 815, 817 (1984). Furthermore, effective treatment may require that the victim avoid contact with the abuser, not just to prevent further abuse, but also to facilitate recovery from past abuse. *E.g., Renville,* 779 F.2d at 437.

At least in child sexual abuse cases, we therefore join the growing number of jurisdictions which recognize that statements regarding the abuser's identity fall within Rule 803(4) whenever, as here, identity is relevant to proper diagnosis and treatment. *See, e.g., Renville, supra; Stallnacker v. State,* 19 Ark.App. 9, 715 S.W.2d 883 (1986); *People v. Galloway,* 726 P.2d 249 (Colo.App.1986); *Wilkins, supra; Aguallo, supra; State v. Garza,* 337 N.W.2d 823 (S.D.1983); *Goldade v. State,* 674 P.2d 721 (Wyo.1983), *cert. denied,* 467 U.S. 1253, 104 S.Ct. 3539, 82 L.Ed.2d 844 (1984). When the abuser's identity is elicited and given to further treatment, the doctor's and the declarant's "selfish interest[s]" in giving and obtaining proper treatment are sufficient guarantees of trustworthiness to at least allow the jury to evaluate the statements. *Renville,* 779 F.2d at 438.

### 2. *Rules 803(24) and 804(b)(5)—The Catchall Exceptions*

Despite the extensive array of specific hearsay exceptions, not every relevant and trustworthy hearsay statement is covered by a specific exception. For example, Nicole's statements to Dr. Kroft,[11] Danielle Parr, and Carol Decker do not fall cleanly within any of the specific exceptions. Rules 803(24) and 804(b)(5) eliminate this gap in the rules. These provisions admit:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point

---

11. Nicole's statement to Dr. Kroft is not admissible under Rule 803(4). Unlike her statements to Dr. Davis, Nicole's statement to Dr. Kroft was spontaneous. Dr. Kroft did not elicit or use Nicole's statement to further diagnosis or treat-

ment. Although the circumstances surrounding Nicole's statement to Dr. Kroft and the spontaneous nature of the statement may be "indicia of reliability," they are not the same indicia recognized by Rule 803(4).

for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Rules 803(24), 804(b)(5).[12]

■ The focus of the residual exceptions is whether the hearsay statement before the court is supported by "equivalent circumstantial guarantees of trustworthiness," i.e., guarantees "equivalent to those offered by the various specific hearsay exceptions enumerated in" Rules 803 and 804. E. CLEARY, *supra* § 324.1, at 908; *accord* M. UDALL & J. LIVERMORE, *supra* § 136, at 305. In *State v. Robles*, 135 Ariz. 92, 94–95, 659 P.2d 645, 647–48 (1983), we noted that some courts have approached this reliability inquiry by comparing the evidence under scrutiny with each of the specific exceptions set out in Rules 803 and 804. We rejected this approach as " 'too mechanistic' " and held that reliability should be evaluated in light of all the circumstances. 135 Ariz. at 95, 659 P.2d at 648 (quoting M. UDALL & J. LIVERMORE, *supra* § 136, at 305). "This approach requires that the evidence be reliable within the spirit rather than the letter of Rule[s 803 and 804] ... and thus allows for judicial discretion to accommodate unusual situations not foreseen by the drafters of the rules when they enumerated the [specific] exceptions." *Id.*[13] The inquiry, therefore, focuses on the quality—in terms

of reliability—of the evidence offered under the residual exceptions. *Id.*

■ The facts in this case easily satisfy the standard announced in *Robles*. First, Nicole's statements were spontaneous; she explained what had occurred with little prompting. If there is evidence of prior interrogation, prompting, or manipulation by adults, spontaneity may be an inaccurate indicator of trustworthiness. But under the facts of this case, Nicole's spontaneity indicates truthfulness. *In re the Marriage of M.N.D. v. B.M.D.*, 356 N.W.2d 813, 818 (Minn.Ct.App.1984); Berliner & Barbieri, *The Testimony of the Child Victim of Sexual Assault*, 40 J. SOCIAL ISSUES 125, 133 (1984).

Second, Nicole's spontaneous revelations of Robinson's acts were consistent. Her statement to Carol Decker in late September was essentially the same as her statement to Danielle Parr in August. Consistency does not always guarantee trustworthiness; it could be evidence that the statements were rehearsed. In this case, however, Nicole's statements were made in stressful situations or were directly responsive to normal, nonleading questions. In these circumstances, a five-year-old's consistency, like her spontaneity, indicates truthfulness. *Renville*, 779 F.2d at 440–41; *B.M.D.*, 356 N.W.2d at 818.

Third, as Dr. Davis testified, Nicole's knowledge of intimate sexual acts was highly unusual. Nicole's age, her knowledge, and her child-like description of Robinson's acts give her statements the ring and quality of truth. *See United States v. Dorian*, 803 F.2d 1439, 1445 (8th Cir.1986) (knowledge and "graphic but child-like description"); *Renville*, 779 F.2d at 441 (age); *United States v. Cree*, 778 F.2d 474, 477–78 (8th Cir.1985) (age); *United States v. Nick*, 604 F.2d 1199, 1204 (9th Cir.1979) ("childish terminology has the ring of verity"); *State v. Myatt*, 237 Kan. 17, 22, 697

---

12. In addition to these common requirements, Rule 804(b)(5) is applicable only if the declarant is "unavailable" under the provisions set out in 804(a). We examine this requirement with Robinson's confrontation clause issues in the next section. *See post* section II–C.

13. The view adopted in *Robles* is supported by the case law giving rise to the catchall provisions. *See, e.g., Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388 (5th Cir. 1961); 4 J. WEINSTEIN & M. BERGER, *supra* ¶ 803(24)[01], at 803-370 to –375.

P.2d 836, 841 (1985) (knowledge); Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 COLUM.L.REV. 1745, 1751 (1983) (knowledge). Without parental manipulation or exposure to adult sexual acts, neither of which even was alleged in this case, five-year-old girls lack the knowledge and experience necessary to fabricate and graphically describe the types of sexual abuse alleged here.

Fourth, Nicole's statements were corroborated by Cari's testimony, by physical evidence, and by Nicole's behavioral changes. *See Nick*, 604 F.2d at 1204 (corroborating physical evidence); *Cree*, 778 F.2d at 477–78 (same); *B.M.D.*, 356 N.W.2d at 818 (abnormal behavior). Although Rules 803(24) and 804(b)(5) do not require corroboration, corroborating evidence obviously bolsters the reliability of Nicole's statements. *See Robles*, 135 Ariz. at 95, 659 P.2d at 648.

Finally, there is no evidence in the record indicating that Dr. Kroft, Ms. Parr, or Ms. Decker had any motivation to lie about the statements or to mislead the jury. Nor does the record suggest that Nicole's statements were motivated or caused by anything other than sexual abuse. In short, "[t]he circumstances surrounding [Nicole's] statements 'strongly suggest that [her] perception, memory, narration and sincerity concerning the matters asserted are trustworthy.'" *Renville*, 779 F.2d at 441 (quoting *United States v. Friedman*, 593 F.2d 109, 119 (9th Cir.1979)); *see also Bertrang v. State*, 50 Wis.2d 702, 708, 184 N.W.2d 867, 870 (1971) (listing factors that may support trustworthiness). *See generally* Note, *supra*, 83 COLUM.L.REV. 1745.

The other requirements of Rules 803(24) and 804(b)(5)—the statement is relevant and more probative than other available evidence, admission will further the interests of justice, and the defendant had notice of the state's intent to use the statements—also are easily satisfied. The state offered Nicole's statements to prove a material fact and it is difficult to imagine more probative evidence. Indeed, common sense suggests that "[s]ome of the most powerful potential evidence ... lies in the child's prior out-of-court statements. When a child first reveals that there has been sexual abuse, the content and manner of the revelation is often striking in its clarity and ring of truth." Berliner & Barbieri, *supra*, 40 J. SOCIAL ISSUES at 133; *cf. Moran*, 151 Ariz. at 380, 728 P.2d at 250. For example, Nicole's casual explanation to Danielle Parr that she had drawn pictures of herself naked and a "weenee with white stuff coming out," leaves little doubt that Nicole was sexually abused. Admitting this type of reliable, highly probative evidence is consistent with the purposes of the rules of evidence and the interests of justice. *See* Rule 102; *Nick*, 604 F.2d at 1204.

■ Although the state failed to give Robinson's counsel formal notice of its intention to admit Nicole's statements under the residual exceptions, we believe the notice requirement was satisfied. All of Nicole's statements were admitted in Robinson's first trial and Robinson's counsel was aware that the state intended to use the statements in the second trial. Under these circumstances, Robinson had sufficient opportunity to prepare to meet the statements. *See United States v. Carlson*, 547 F.2d 1346, 1355 (8th Cir.1976) (purpose of notice requirement is to give adverse party adequate time to prepare to contest use of the statement), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977).

We hold that the challenged hearsay statements were admissible under the rules of evidence. In reaching this conclusion, we do not substitute our evaluation of reliability for the trial court's judgment. The trial judge held the statements admissible under the more stringent requirements of A.R.S. § 13–1416. *A fortiori*, they would have been admissible under the rules.

■ As this case demonstrates, the admissibility of hearsay statements by alleged child victims under the residual exceptions to the hearsay rule requires an analysis of reliability to determine whether the circumstances of each case provide "guarantees of trustworthiness" equivalent in quality, if not in kind, to the guaran-

tees provided by the specific exceptions to the rules. To the extent that this need for case-by-case determination is a vice, it is one that was shared by A.R.S. § 13–1416. Furthermore, the difficulty of case-by-case analysis is overshadowed by the importance of the problem we seek to address. Sexual abuse of children is an old problem that society and the law have been late in recognizing and meeting. Fortunately, the rules of evidence, which have their origin in the common law, are flexible enough to meet the problem of child sexual abuse.

## C. *Unavailability and the Confrontation Clause*

 The confrontation clauses of the state and federal constitutions guarantee criminal defendants the right to confront their accusers. Ariz. Const. art. 2, § 24; *State v. Edwards*, 136 Ariz. 177, 665 P.2d 59 (1983); U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This right protects the accused's ability to confront and cross-examine his accusers face-to-face. *Edwards*, 136 Ariz. at 180–81, 665 P.2d at 62–63. "Notwithstanding its essential nature in securing a fair trial," however, "the confrontation clause has never been interpreted literally to require the exclusion of all statements of persons who do not appear at trial." 136 Ariz. at 181, 665 P.2d at 63. "[C]onsiderations of public policy and the necessities of the case," *Mattox v. United States*, 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895), permit dispensing with confrontation at trial if two conditions are met: (1) the declarant's in-court testimony is "unavailable," and (2) the declarant's out-of-court statement bears adequate "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 67, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).[14]

 The trial judge held that Nicole was "unavailable" to testify under Rule 804(a)(4) because of an existing mental infirmity. The trial judge based his finding on expert testimony indicating that Nicole would be uncommunicative if asked about the assault and could be further traumatized by courtroom proceedings. He also reviewed the transcripts of Nicole's prior unsuccessful attempts at live and videotaped testimony. Based on this evidence, the court concluded that because of her age and the trauma resulting from sexual abuse, Nicole was *incapable* of testifying about the event.[15] Although it is generally preferable for the trial judge to personally examine the declarant, the court of appeals correctly determined that there was sufficient evidence in this case for the judge, in

**14.** In *Reidhead*, 146 Ariz. at 316, 705 P.2d at 1367, a majority of the court of appeals, relying on *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), suggested that the confrontation clause forbids the admission of even reliable hearsay except to prove "peripheral," rather than "crucial," matters. This suggestion is incorrect. The plurality opinion in *Dutton* did not expressly limit the use of hearsay to peripheral matters; it merely distinguished prior cases on that ground. Since *Dutton*, the Court has not limited the use of reliable hearsay to peripheral matters. *See, e.g., Roberts, supra; United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). Furthermore, limiting the use of reliable hearsay to peripheral matters contradicts Rules 803(24) and 804(b)(5), which require, as a condition of admissibility, that hearsay evidence be *more probative* than any other available evidence. *Reidhead* therefore is disapproved, insofar as it holds that the confrontation clause restricts the admissibility of reliable hearsay to peripheral issues.

**15.** In addition to the factors considered by the trial judge, we note that defense counsel apparently could have called Nicole as a defense witness (the trial judge did not find Nicole incompetent) if he thought her testimony was in Robinson's best interest. Although the state bears the burden of proving unavailability when it offers the declarant's out-of-court statements, defense counsel's unwillingness to call Nicole as a defense witness is not irrelevant. *See Dutton*, 400 U.S. at 89 n. 19, 91 S.Ct. at 219 n. 19. The purpose of the confrontation clause is to give *defendant* the opportunity to test the state's evidence through cross-examination and to have the factfinder evaluate the state's witnesses. *See* 4 J. WEINSTEIN & M. BERGER, *supra* ¶ 800[04], at 800–19 to 800–23; E. CLEARY, *supra* § 252, at 749–52. Therefore, it is difficult to find a clear violation of the confrontation clause when, as here, the state has facially valid reasons for not calling the declarant, the state's hearsay evidence is supported by particularized guarantees of trustworthiness, the record supports the trial court's finding that the witness is incapable of testifying, and the defendant makes no attempt to call the witness even though she was physically present.

his discretion, to find that Nicole's in-court testimony was "unavailable." *Robinson,* 153 Ariz. at 195–196, 735 P.2d at 800.

The trial court's finding of unavailability is not the end of our inquiry. Cross-examination at trial is usually the best, but not the only, way to assure the trustworthiness of evidence introduced against defendant. Therefore, once unavailability has been established, the question becomes

> whether a particular hearsay declaration, otherwise admissible, has such great probative value as evidence of a material fact and such a high degree of trustworthiness under all of the circumstances that its reception outweighs any risk to a defendant that unreliable evidence may be received against him, the deficiencies of which he cannot adequately test because he cannot cross-examine the declarant.

*Nick,* 604 F.2d at 1203; *see also Roberts,* 448 U.S. at 66–67, 100 S.Ct. at 2539; *Dorian,* 803 F.2d at 1447; *State v. Roy,* 214 Neb. 204, 207, 333 N.W.2d 398, 401 (1983).

 In *Roberts,* the Supreme Court held that "indicia of reliability" sufficient to avoid a violation of the confrontation clause "can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." 448 U.S. at 67, 100 S.Ct. at 2539. The reliability of Nicole's statements to Dr. Davis can be inferred because the statements fall within Rule 803(4). *See Iron Shell,* 633 F.2d at 87.

 Nicole's other statements, to Danielle Parr, Dr. Kroft, and Carol Decker, do not fall within a "firmly rooted hearsay exception" and therefore are admissible only if supported by "particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 67, 100 S.Ct. at 2539. This standard is similar to the guidelines spelled out in Rule 803(24). *Dorian,* 803 F.2d at 1447; *Nick,* 604 F.2d at 1203. As previously explained, *see ante,* at 201–202, 735 P.2d at 811–812, Nicole's statements were either spontaneous or directly responsive to innocuous questions. The record contains no suggestion of leading interrogation, repeated questioning, overreaching, or manipulation by adults. Nicole's childish terminology "has the ring of verity," and her statements were corroborated by physical evidence. Under these circumstances, it is extremely unlikely that the statements were fabricated. *Nick,* 604 F.2d at 1203–04.

 An additional factor of great weight in this case is the unlikelihood that more trustworthy or probative evidence could have been produced by Nicole's in-court testimony. A young child's spontaneous statements about so unusual a *personal* experience, made soon after the event, are at least as reliable as the child's in-court testimony, given months later, after innumerable interviews and interrogations may have distorted the child's memory. Indeed, Nicole's statements are valuable and trustworthy in part because they exude the naivete and curiosity of a small child, and were made in circumstances very different from interrogation or a criminal trial. *See* Berliner & Barbieri, *supra,* 40 J. SOCIAL ISSUES, at 133; *cf. United States v. Inadi,* 475 U.S. 387, 395–396, 106 S.Ct. 1121, 1127, 89 L.Ed.2d 390 (1986) ("co-conspirator statements derive much of their value from the fact that they are made in a context very different from trial, and therefore are usually irreplaceable as substantive evidence"). In short, Nicole's statements were sufficiently trustworthy that their admission did not violate Robinson's right to confront his accusers.[16] *See Nick,* 604 F.2d at 1204.

 In holding that Robinson's confrontation rights were not violated in this case, we are not inviting wholesale assaults on the confrontation clause. The rule remains that whenever possible, eye-to-eye, face-to-face, jury-to-witness confrontation is required. Society's need to prosecute accused abusers is no greater than its need to preserve the Constitution. We refuse to

---

**16.** Robinson also argues that the trial court erred when it refused to admit Nicole's testimony from the first trial that Cari had poked her with a pencil. We did not accept review on this issue.

repeal the confrontation clause for child abuse cases. Child-victims' out-of-court statements are admissible only when, as here, the rules of evidence and the principles announced in *Roberts* are fully satisfied. However, when these elements are satisfied, and, as here, the child's hearsay statements are the most reliable evidence available, it would be a perversion of the confrontation clause to exclude the evidence. The confrontation clause was intended to give the defendant the benefit of what is usually the most reliable procedure, not to absolutely preclude society's use of the most reliable evidence available.

### III. SENTENCING ISSUES

A jury convicted Robinson of two counts of sexual conduct with a minor and two counts of child molestation. A.R.S. §§ 13–1405, –1410 (Supp.1986). The trial court sentenced Robinson to consecutive maximum terms of fourteen years for each count.

Robinson cites *State v. Mulalley*, 127 Ariz. 92, 618 P.2d 586 (1980) and *State v. Perkins*, 144 Ariz. 591, 699 P.2d 364 (1985) for the proposition that A.R.S. § 13–604(H) precludes the trial judge from ordering consecutive sentences. We addressed this issue in *State v. Noble*, 152 Ariz. 284, 287, 731 P.2d 1228, 1231 (1987) and held that A.R.S. § 13–604 "places no limits on a judge's ability to impose consecutive sentences, assuming that the judge has complied with other requirements. *E.g.*, [A.R.S.] § 13–116, § 13–708." *Id.* at 287, 731 P.2d at 1231. Thus, Robinson's consecutive sentences were permissible if the trial court complied with §§ 13–708 and 13–116.

■ When Robinson was sentenced, A.R.S. § 13–708 allowed consecutive sentences if "the court ... set forth on the record the reason for its sentence."[17] The court of appeals held, and we agree, that the trial judge complied with § 13–708 in this case by articulating five aggravating

factors justifying consecutive sentences. 153 Ariz. at 194–195, 735 P.2d at 804–805.

■ A.R.S. § 13–116[18] precludes consecutive sentences if the defendant is being sentenced under different sections of the law for the same act. This statutory restriction on consecutive sentences does not help Robinson because he was convicted of two separate sexual acts with each victim. Each of these four crimes was a separate act. *See Noble*, 152 Ariz. at 286–287, 731 P.2d at 1230–31; *State v. Griffin*, 148 Ariz. 82, 85–86, 713 P.2d 283, 286–87 (1984).

### IV. CONCLUSION

The trial court should have determined the admissibility of the challenged hearsay statements under the rules of evidence instead of under A.R.S. § 13–1416. However, any error was harmless, because the statements were admissible under Rules 803(4), 803(24), and 804(b)(5). Admitting the hearsay statements did not violate the confrontation clause because Nicole's testimony was unavailable and the statements were sufficiently reliable.

Our search of the record revealed no fundamental errors. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); A.R.S. § 13–4035(B). Robinson's convictions and sentences are affirmed. The court of appeals' opinion is affirmed as modified.

GORDON, C.J., and CAMERON and HOLOHAN, JJ., concur.

HAYS, J., participated in the determination of this matter but retired prior to the filing of this opinion.

MOELLER, J., did not participate in the determination of this matter.

---

**17.** Section 13–708 has been amended to make all sentences presumptively consecutive unless the trial judge states his or her reasons for imposing concurrent sentences. A.R.S. § 13–708 (Supp.1986).

**18.** Section 13–116 provides:

An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent. ...