Kenneth HAWKINS *v.* STATE of Arkansas

CR 01-1065                                          72 S.W.3d 493

Supreme Court of Arkansas
Opinion delivered April 25, 2002

*William R. Simpson, Jr.*, Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. Appellant, Kenneth Hawkins, was convicted of rape, and sentenced to life imprisonment as a habitual offender pursuant to Ark. Code Ann. § 5-4-501 (Supp. 2001). This conviction stems from the rape of appellant's stepdaughter, R.T., who was under the age of fourteen at the time the offense occurred.

During appellant's trial, the physician who treated R.T. after the rape, was permitted to testify that R.T. identified appellant as her attacker. Appellant objected to this testimony arguing that it was hearsay and that it should have been excluded. The trial court overruled appellant's objection.

On appeal, appellant challenges the trial court's evidentiary ruling. We affirm the trial court.

In his only point on appeal, appellant contends that the trial court erroneously permitted R.T.'s doctor to testify that R.T. identified appellant as her attacker. Appellant argues that this testimony is impermissible hearsay. A trial court is accorded wide discretion in evidentiary rulings. *Flores v. State*, 348 Ark. 28, 69 S.W.3d 864 (2002). We will not reverse a trial court's ruling on a hearsay question unless the appellant can demonstrate an abuse of discretion. *Id.*

■ Pursuant to Rule 801(c) of the Rules of Evidence, "'hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Such testimony is generally inadmissible evidence. *See* Rule 802 of the Arkansas Rules of Evidence.

In the case now before us, appellant objected to Dr. May Hawawini testifying as to statements made to her by R.T., during her examination of R.T. The trial court denied appellant's hearsay objection without explanation. On appeal, the State argues that Dr. Hawawini's testimony was admissible pursuant to Rule 803(4) of the Arkansas Rules of Evidence. This rule provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (4) *Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

*Id.*

We have recently reviewed our court's interpretation and application of Rule 803(4) in *Flores supra*. In *Flores*, we were asked to determine whether hearsay evidence was properly admitted pursuant to Rule 803(4). Specifically, we were asked to determine whether the trial court erred when it allowed a treating physician to testify that his patient's mother identified her boyfriend as the individual who had inflicted injuries on her child by throwing him up against a wall. *Flores, supra*. We discussed previous cases in which this court addressed appropriate use of Rule 803(4). Additionally, we reviewed cases in which our court of appeals and the Eighth Circuit Court of Appeals has applied or refused to apply the medical-treatment exception to the hearsay rule. *Flores, supra*.

■ In *Flores*, we stated "the basis for this hearsay exception is the patient's strong motivation to be truthful in giving state-

ments for diagnosis and treatment." *Id.* (*citing* Cotchett and Elkind, *Federal Courtroom Evidence* 144 (1986)). We further acknowledged that statements describing medical history regarding the cause of the condition are also admissible under the rule, if pertinent to the diagnosis or treatment. However, where such information is not relevant for diagnosis, but rather attempts to fix blame, it must be excluded. *Flores, supra.*

■ ■ After providing the background for the exception, we applied a test that was articulated by the Eighth Circuit in *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980) to assist us in determining whether hearsay evidence fits within the medical-treatment exception. *Flores, supra.* The two-prong test asks: first, is the declarant's motive consistent with the purpose of the rule; and second, is it reasonable for the physician to rely on the information in diagnosis or treatment. *Flores, supra.* In *United States v. Renville*, 779 F.2d 430 (8th Cir. 1985), the Court of Appeals explained:

> The test reflects the twin policy justifications advanced to support the rule. First, it is assumed that a patient has a strong motive to speak truthfully and accurately because the treatment or diagnosis will depend in part upon the information conveyed. The declarant's motive thus provides a sufficient guarantee of trustworthiness to permit an exception to the hearsay rule. Second, we have recognized that a fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription.

*Id.* (Internal citations omitted).

After applying this test to the facts in *Flores*, we determined that the trial court properly admitted the mother's statement to the doctor concerning the fact that the child was physically abused based on the medical-treatment exception, but had improperly admitted the portion of the testimony that identified Flores as the child's attacker. *Id.* We determined that the identification of the perpetrator was not used by the physician in the diagnosis or treatment of the child's injuries. Accordingly, we concluded that the statement that identified the perpetrator was improperly admitted pursuant to Rule 803(4). *Flores, supra.*

The facts in this case are readily distinguishable from the facts in *Flores*. Specifically, in the case *sub judice*, the declarant was a child victim who was responding to questions from the physician seeking to determine the cause of the injury and the treatment to be provided. By contrast, the hearsay statements in *Flores* were not made in response to questioning of a victim by a physician in her process of ascertaining circumstances reasonably pertinent to diagnosis or treatment. Another critical distinction between the case now before us and *Flores* is that the hearsay statements in *Flores* were made in an effort to shift blame from one child abuser to a second child abuser. Here, the statements were made by an abused child in response to an effort by the doctor to treat and diagnosis the child's injuries.

In *Flores*, we also noted a modification of the principles of Rule 803(4) that is relevant to the case *sub judice*. Specifically, we stated:

> Only in the special situation of sexual or physical abuse of a child has the rule of excluding the identification of the perpetrator been modified. Again, it is the Eighth Circuit Court of Appeals that has outlined this child-abuse exception in the leading case on the matter. *See United States v. Renville*, 779 F.2d 430 (8th Cir.1985).

*Flores, supra.*[1]

In *Stallnacker v. State*, 19 Ark. App. 9, 715 S.W.2d 883 (1986), our court of appeals considered the *Renville* approach in deciding whether a trial court had properly admitted a physician's testimony regarding a victim's identification of her father as her sexual abuser. The identification was made in response to the physician's questions. *Stallnacker, supra.* The victim was admitted to the emergency room of the hospital complaining of abdominal pain. The treating physician, while completing a menstrual and sexual history to rule out certain medical conditions, asked the child if she had ever engaged in sexual intercourse. *Id.* The child responded "only when my father made me." *Id.* This statement

---

[1] In *Flores*, we concluded that the *Renville* analysis did not apply to the facts of that case.

was introduced into evidence at trial through the treating physician. Stallnacker sought to exclude the evidence on appeal. *Id.*

■ The court of appeals, in its consideration of whether the evidence should have been admitted looked to the Eighth Circuit's *Renville* opinion and quoted the following language with approval:

> We believe that a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of rule 803(4) that it should not fall under the general rule. Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household are reasonably pertinent to treatment.

*Stallnacker, supra. (quoting Renville, supra.).*

■ The court of appeals noted that child abuse extends further than physical injury, and the "physician must be attentive to treating the emotional and psychological injuries which accompany this crime." *Stallnacker, supra (citing Renville, supra).* Additionally, the court of appeals noted that "prevention of recurrence of the injury is a paramount consideration in the treatment of children who have been sexually abused in the home." *Stallnacker, supra.* The court of appeals also explained that this consideration is expressed in the legislatively imposed duty placed on physicians to report suspected cases of child abuse.[2] *Id.* Finally, the court of appeals noted that the obligation on the physician to prevent the abused child from being returned to an environment in which he or she cannot be adequately protected from recurrent abuse "is most immediate where the abuser is a member of the victim's household." *Id.* *(citing Renville, supra.)* The court of appeals concluded that the trial court properly admitted the hearsay evidence from the treating physician identifying Stallnacker as the patient's abuser.[3] *Stallnacker, supra.*

---

[2] Arkansas Code Annotated § 12-12-507 (Supp. 2001) requires medical personnel to report suspected child maltreatment.

[3] Our court of appeals has also extended the *Renville* analysis to include situations involving physical abuse when the victim answers a doctor's inquiry about what happened. *See Clausen v. State*, 50 Ark. App. 149, 901 S.W.2d 35 (1995).

Remaining mindful of the reasoning of these cases, we must now determine whether the trial court properly admitted Dr. Hawawini's testimony. Dr. Hawawini testimony was as follows:

Q: [PROSECUTING ATTORNEY] What did she [R.T.] come to your office for on that date? What was her problem?

A: [DR. HAWAWINI] On that date she was brought by her grandmother, complaining of pain when urinating, dysuria.

Q: How was she acting on that day?

A: It was actually brought to my attention. I was examining another patient in another room when I heard [R.T.] screaming and crying and saying that — and I went out to see what was going on. My nurse was trying to give her a urine cup to have a sample, to give us a sample, and that's when she was crying that she didn't want to go pee.

Q: Had you ever seen her act like that before?

A: No.

Q: How does she normally act?

A: She's been always sweet and cooperative and, a very sweet and outgoing girl, yeah.

Q: Were you able to get her calmed down where you could perform some sort of examine on her?

A: Yes. What happened is, I told her it's okay. We don't have to do it if it's that painful at that point. Let's just talk and do a physical exam first. And we quieted her down first.

Q: And after she got quieted down, did you perform a physical exam on her?

A: Yes. I had to talk to her first a little while and calm her down. And then I started interviewing her and do a physical exam on her, yes.

Q: And when you talk about a physical exam, do you examine the genitalia?

A: Well, as a part of a complete physical exam, especially when you have such a complaint, urinating, any problems with urination, a genitalia exam is a part of your exam. You should perform that, yes.

Q: And you performed that on her at that time?

A: Yes.

Q: What were your physical findings, if any, did you see on her then?

A: It was, it was severe erythema and edema, which is like severe redness and swelling of the genital area, the labia minora, and all around, the tissue around it. It was very tender to touch.

It was really hard at that point to kind of calm her down. We were talking to her all through. But it was very tender to touch.

\* \* \*

A: Well, I had prepared some Q-tips to do cultures and we obtained a few cultures. But I didn't do all the cultures. It was very hard to continue. But then I quiet down [R.T.] and then sat down and asked her if there is anything that she wants to tell me about, that there is something going on or —

Q: And was that what you call a patient history? Was a patient history taken of [R.T.] by you at that time?

A: Yes. It was, the detail was really afterward when I was, after I examined her.

Q: And did you use that history in making you final diagnosis of [R.T.] on that day?

A: Yes ma'am.

Q: What did she tell you happened to her?

Ms. Byrd: [DEFENSE COUNSEL] I just object to hearsay, your honor.

The court: All right. That will be overruled.

Q: [PROSECUTING ATTORNEY] What did she tell you happened to her?

Dr. Hawawini: I would like to read my note, your honor.

The court: That would be good.

Dr. Hawawini: Okay. I started interviewing [R.T.]. She was crying, and then she said that she wants to tell me about it and asked to be alone, that me and her be alone, left alone in the

room. And started to cry again and said, I don't know how to tell you.

I said, quote to quote, "Do you want me to ask you questions?"

She said, quote to quote, "Yes."

I said, "Did somebody try to hurt you?"

She said, "Yes."

I said, "Is it a stranger?"

She said, "No."

I said, "Is it a man or women?" She started crying then and I started talking.

Quote to quote, she said, "It's a man. He is no stranger. He lives with us. He is a truck driver. He is my stepfather." And stopped again to cry.

Then, I said, "It's okay. Everything will be okay." And she nodded her head and stopped crying. And I said, "Can you tell me just what, tell me what happened?"

She said, "He hurt me. He put his private parts between my legs."

I said, "How many times did it happen? Did it happen only one time?"

She said, "No, more."

I said, "When was the last time?"

She said, "A while ago, in February on a Tuesday," and started crying again and did not want to talk about it anymore.

And I said, "Just one last question. Did you tell anybody else?"

She said, "No. Only you."

Q: [PROSECUTING ATTORNEY] And based upon that, what did you do after?

A: Well, after that, I had, I had, you know, reassured her, spent a little time with her. And then I told her that I am going to have to tell somebody about it so we make sure to see what happen in

that, it will never happen again. And then I went and called the DHS office. I called Dr. Jerry Jones at Child House at Children's for further evaluation.

■ We now address the issue whether Dr. Hawawini's testimony regarding the identification of appellant as R.T.'s rapist was properly admitted under Rule 803(4). R.T.'s identification of appellant as her abuser allowed Dr. Hawawini to take steps to prevent further abuse by her stepfather, who was a member of her household. Additionally, R.T.'s identification of appellant as her abuser allowed Dr. Hawawini to take steps to treat the emotional and psychological injuries which accompanied the rape. Moreover, we note that based on R.T.'s statements Dr. Hawawini referred her to a physician at Children's Hospital who specialized in treating children who are sexually abused. Finally, R.T.'s identification of appellant as her abuser permitted Dr. Hawawini to fulfill her legislatively imposed duty of calling the child-abuse hotline and reporting the crime. Under our analysis it was not necessary that the victim's statement be made following a physician's explanation to the child that the question is important to the diagnosis or treatment, nor is it necessary that the victim manifest an understanding of the importance of her statements to the treating physician. *But see Olesen v. Class*, 164 F.3d 1096 (8th Cir. 1999). Accordingly, we hold that R.T.'s statements to Dr. Hawawini fall within the medical-treatment exception set out in Rule 803(4) and were properly admitted by the trial court.

## 4-3(h) Review

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no error has been found.

Affirmed.

IMBER, J., not participating.