611 So.2d 915 (1992)
Mike HALL
v.
STATE of Mississippi.
No. 90-KA-0278.
Supreme Court of Mississippi.
December 17, 1992.
Rehearing Denied February 18, 1993.
*916 Robert Glen Waddle, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Pat S. Flynn, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
This is a criminal appeal from the Hinds County Circuit Court, Second Judicial District, in which Mike Hall was convicted of *917 sexual battery and sentenced to serve twenty-five (25) years in the custody of the Department of Corrections. This appeal is from Hall's second trial and conviction for sexual battery of his son. The first conviction was reversed and remanded in Hall v. State, 539 So.2d 1338 (Miss. 1989).

A. Statement of the Facts
In 1971, Michael A. Hall married Sue Ann Strong Hall. The Halls had two children during their marriage. On March 3, 1974, their first son, Keith, was born, and on June 2, 1979, their second son, Chad, was born. Hall and his wife were subsequently divorced in February of 1981 and Sue Ann Hall was given custody of the children.
In September, 1983, the boys went to live with their father in Edwards, Mississippi. Over the next several years Chad and Keith were transferred between Hall and his ex-wife.
At some time in 1983, the Hinds County Department of Public Welfare (DPW)[1] received a complaint asserting that Chad was being sexually abused. An investigation was made on this complaint but nothing further was done because Hall changed his residence. In April of 1985, Debbie Graham, a social worker with the Hinds County DPW, received another complaint that Chad was being sexually abused by Hall. Shortly thereafter, Graham obtained an order from the Youth Court of Hinds County directing that Keith and Chad be removed from Hall's custody, and the children were taken to a children's emergency shelter.
While at the shelter, Brenda Chance, a social worker specializing in child therapy, interviewed the two boys. Chad was also physically examined by Dr. Julia Sherwood, a pediatrician. The findings of Graham, Chance, and Dr. Sherwood suggested that Hall was sexually abusing his then five-year-old son, Chad.
Hall was formally charged with sexual battery upon his son on October 29, 1985, under Miss. Code Ann. § 97-3-95 (1985). He was tried and convicted on July 25, 1986. During this first trial, Chad Hall was not a witness. Debbie Graham and Brenda Chance testified to conversations they had with Chad. These conversations described a course of sexual acts performed by Hall on Chad. The Court reversed and remanded the case for a new trial for hearsay evidentiary reasons. Hall v. State, 539 So.2d at 1348.
A second trial of Hall was held on February 5, 1990. Chad, then 11, testified that many times while living in Edwards his father sodomized him. On one occasion, Keith accidentally saw his father sodomizing his brother. Both Chad and Keith were witnesses for the state. Also testifying for the state were Dr. Julia Sherwood and Brenda Chance. Mike Hall took the stand in his own defense and denied all charges. Testifying on Hall's behalf were Fredna Hall, Hall's present wife and fiance at the time of the sexual battery; Dr. Moran, the Halls' family physician; Hall's sister; Hall's mother; and the Halls' pastor. In rebuttal, the state presented Debbie Graham.
On February 8, 1990, Hall was again convicted of sexual battery and sentenced to 25 years in the custody of the Mississippi Department of Corrections.

B. Statement of the Issues
The appellant, Mike Hall, raises six issues on appeal. They are as follows:
(1) The trial court erred in allowing witnesses Brenda Chance, Dr. Julia Sherwood and Debbie Graham to testify regarding Child Abuse Syndrome.
(2) The trial court erred in allowing Chance, Sherwood and Graham to testify as expert witnesses.
(3) The trial court erred in admitting a tape recording of Chance and Chad Hall into evidence.

(4) The trial court erred in allowing the indictment to be amended, therefore *918 denying the appellant a trial de novo and a fair trial.

(5) The trial court erred in allowing Chad and Keith Hall to testify as competent witnesses.
(6) The trial court erred in overruling appellant's motion for new trial and also erred in several other ways.

II. LEGAL ANALYSIS

Standard of Review
Under this Court's standard of review, the admissibility of evidence rests within the trial court's discretion. Wade v. State, 583 So.2d 965, 967 (Miss. 1991). Unless his judicial discretion is abused, this Court will not reverse his ruling. Lewis v. State, 573 So.2d 719, 722 (Miss. 1990). The qualifications of an expert in fields of scientific knowledge is left to the sound discretion of the trial judge. His determination on this issue will not be reversed unless it clearly appears that the witness is not qualified. Wilson v. State, 574 So.2d 1324, 1334 (Miss. 1990); Smith v. State, 530 So.2d 155, 162 (Miss. 1988).

Issue A: Did the court err by allowing testimony as to Child Abuse Syndrome?
The defendant claims that three of the state's witnesses testified as to "child abuse syndrome." Therapist Brenda Chance, pediatrician Dr. Julia Sherwood, and social worker Debbie Graham all testified over defendant's timely objection. The question is whether the witnesses testified as to a "syndrome," or whether they were merely describing common behaviors of child abuse victims.
While the defendant objects to the testimony of all three of the state's expert witnesses, he concentrates on Chance's testimony. Most of Chance's testimony is repetitious and can best be illustrated by the following:
BY [STATE]: Ms. Chance, can you tell me whether or not in the course of your experience you've observed situations where there's preferential treatment towards one sibling over another for abuse purposes?
BY MS. CHANCE: Yes.
Q. And what, if anything, did you observe in this set of circumstances?
A. This particular child appeared to have been chosen as the lover for the  for the  perpetrator and that offerings of gifts and threats were made in order to perpetuate that the perpetrator's needs would be met through the child.
Q. Through this child. Do you mean Chad Hall?
A. Yes.
Q. Ms. Chance, all this behavior that you have described in the course of this interview, can you tell us whether or not there is a term for situations in which a child exhibits this kind of behavior? Are you familiar with any kind of syndromes?
BY MR. WADDLE: Objection to leading.
BY THE COURT: Overruled.
A. It's  it's consistent with a child who has been caught up in  I  I don't know if it's called syndrome, but a  a child abuse pattern of  of being, this particular child, in a sadistic sexual child abuse situation.
Q. Can you tell us, in the course of your experience, whether or not the behavior that you observed throughout your treatment of Chad Hall would be consistent with a child who was subjected to chronic sodomy?
A. It is.
Both Hall and the State rely heavily on the cases of Hosford v. State, 560 So.2d 163 (Miss. 1990) and Goodson v. State, 566 So.2d 1142 (Miss. 1990). These two cases are the most illustrative of the status of our law on the admission of evidence in sex abuse cases.
The defendant argues that both Hosford and Goodson forbid "syndrome" testimony and that Chance impermissibly testified about it. The "syndrome" to which the Court in both Hosford and Goodson refers is described as "Child Sexual Abuse Accommodation Syndrome" (CSAAS). John Myers, et al, Expert Testimony in Child Sexual Abuse Litigation, 68 Neb.L.R. 1, *919 66-71 (1989). CSAAS was developed by Dr. Roland Summit to provide a "common language for professionals working to protect sexually abused children." Myers at 67. However, this theory was not meant to be used as a diagnostic device to show that abuse had, in fact, occurred. Id. at 67. Thus, any attempt to show that a child had been abused because he exhibits some signals of CSAAS is an improper usage of Dr. Summit's theory.
There appears to be some confusion between what is "syndrome" testimony and what is simply a description of common characteristics of sexually abused children. This Court in Hosford expressed doubt that any such "syndrome" existed and that courts should be reluctant to allow expert testimony on this issue. The Court relied on the Myers article for this proposition. See Myers, at 69. However, immediately following that quote in Myers, is the following:
Presence in a young child of behaviors observed in sexually abused children is sometimes probative of abuse. Expert testimony explaining such behaviors can assist the jury in understanding the evidence and determining facts in issue. Such evidence should be admitted unless its probative value is substantially outweighed by the potential for unfair prejudice or confusion of the jury. Such testimony should rarely be prejudicial, and the evidence is not so arcane or ambiguous as to confuse the fact finder.

When considering the theory of expert testimony discussed in this subsection, it is vitally important to avoid the confusion engendered by reference to syndromes. When expert testimony describing behaviors seen in sexually abused children is offered as substantive evidence of abuse, the expert is not describing a syndrome. The expert is certainly not describing Summit's child sexual abuse accommodation syndrome. At the present time, experts have not achieved consensus on the existence of a psychological syndrome that can detect child sexual abuse. Use of the word syndrome leads only to confusion, and to unwarranted and unworkable comparisons to battered child syndrome. The best course is to avoid any mention of syndromes.
Id. at 69. Other sections of the Myers article support the idea that while testimony as to CSAAS is improper, testimony by an expert as to certain behavior common to sexually abused children is proper. See Myers, at 8, 13, 51, 62-64, 65.
The expert testimony in this case was offered as substantive evidence of abuse and was not describing a syndrome. The State used the word "syndrome" in its direct questioning of Chance, but the witness quickly discounted the use of any such term and instead described what she found to be common behaviors of sexually abused children. The testimony of Sherwood is similar to Chance's.
The decision to hold admissible the expert testimony describing Chad Hall's behavior as common with that of a sexually abused child is within the trial judge's discretion absent an abuse of that discretion. Wade, 583 So.2d at 967; Lewis, 573 So.2d at 722. The facts support his decision and it is, therefore, upheld.

Issue B: Did the court err by allowing Chance, Sherwood, and Graham to testify as expert witnesses?

The defendant argues that the State's witnesses cannot be experts because there is no field in which they are qualified. He argues that Hosford and Goodson have found that "child abuse syndrome" testimony is unreliable and that there are no true experts in the field of child abuse.
Graham was never presented by the state as an expert witness. She testified as to patterns that occur in families where abuse is present. She did not testify that Chad had been abused. Even so, Graham has worked for the Department of Public Welfare for over 10 years; and the trial court properly admitted her testimony as a lay witness under Miss.R.Evid. 701.
The trial court found both Chance and Sherwood to be experts on child abuse. *920 In Hosford, this Court set out the test under Miss.R.Evid. 702[2] which governs expert testimony. The inquiry is two-fold: (1) "Is the field of expertise one in which it has been scientifically established that due investigation and study in conformity with techniques and practices generally accepted within in the field will produce a valid opinion?" Hosford, 560 So.2d at 168 (citing House v. State, 445 So.2d 815, 822 (Miss. 1984); Miss. Farm Bureau Ins. Co. v. Garrett, 487 So.2d 1320, 1326 (Miss. 1986)) and (2) will the proposed testimony assist the trier of fact? Miss.R.Evid. 702; Hosford, 560 So.2d at 168. The Hosford court never did apply this test, however, because it found that the defendant did not make a proper objection to the expert witness' qualifications.
Under the test for expert testimony enumerated in Miss.R.Evid. 702, and espoused in Hosford, supra, the State's experts are more than qualified. Brenda Chance's qualifications are fully set out in the record. Ms. Chance received a BS degree from Mississippi College in 1978 with an emphasis in psychology and sociology. In 1980, she received a Master's degree in clinical social work from the University of Southern Mississippi, with a focus on clinical intervention with children. She was employed for four years at the Jackson Mental Health Center where she treated primarily children and their families. She worked with the Hinds County Welfare Department investigating child sexual abuse and worked with treatment groups for physically and sexually abused children. She has worked in private practice with children who were experiencing emotional disorders, divorce adjustment, sexual abuse, etc. She is a member of the National Association of Social Workers, the Academy of Certified Social Workers, the National register of Clinical Social Workers and is board certified in clinical social work. She has also presented several workshops on the treatment of sexually abused children.
Dr. Sherwood is a licensed pediatrician. She graduated from the University of Mississippi medical school in 1978, did a three year residency in pediatrics, taught at the University for two years, was Chief Resident, and was in charge of the teaching of residents as an instructor in pediatrics. She then went into private practice but remained on the Associate Clinical Staff at the University of Mississippi. She is a member and fellow of the American Academy of Pediatrics.
The trial judge properly qualified Chance and Sherwood as expert witnesses in the field of child abuse. Based on this record, they were qualified by knowledge, skill, experience, training, and education to assist the trier of fact. Miss.R.Evid. 702. As experts, they could testify as to common symptoms and behavior which are consistent with sexual abuse.

Issue C: Did the court err in admitting a tape recording of Chance and Chad Hall into evidence?

The defendant vigorously objects to the introduction of a tape recording made by Chance of her and Chad Hall. Mike Hall claims that the tape contained inadmissible hearsay and impermissibly bolstered the testimony of the victim and the state's expert witnesses. The tape was made in Chance's office during an interview session with Chad on June 20, 1985, about nine months after the alleged abuse. It is very persuasive. With the help of anatomically correct dolls, Chad Hall described how his father sodomized him and stated that he wants to kill his father for hurting him.
The problem is that this type of testimony is hearsay. The latest discussion on hearsay testimony in a sexual abuse case is in Quimby v. State, 604 So.2d 741 (Miss. 1992). It controls here. In Quimby, the *921 state produced a police detective who testified extensively and graphically as to statements made to her by the child victim describing the various ways her father had abused her. Under Miss.R.Evid. 802, "[h]earsay is not admissible except as provided by law."[3]Miss.R.Evid. 803 provides a list of exceptions to the rule against which hearing sets forth statements which are not excluded by the hearsay rule even though the declarant is available as a witness.[4] Since the victim, Chad Hall, testified as a witness, the admissibility of hearsay statements on the tape and by Chance is governed by Rule 803. The statements do not fall within the scope of Miss.R.Evid. 803(1) [Present Sense Impression], Miss. R.Evid. 803(2) [Excited Utterance], or Miss. R.Evid. 803(3) [Then Existing Mental, Emotional, or Physical Condition].[5] Instead, this court in Quimby, like the trial court in the case sub judice, concentrates on 803(24):
RULE 803. HEARSAY EXCEPTIONS; AVAILABILITY OF DECLARANT IMMATERIAL
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(24) Other Exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interests of justice will be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.[6]
This residual, or "catch-all," exception has five requirements for admissibility: (1) trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice.[7] Findings regarding these requirements must be made on the record.[8] The trial court here addressed all five points required by Miss.R.Evid. 803(24) and found that the statements made by Chad Hall and Brenda Chance were admissible under the catch-all provision of the Rules of Evidence.
At the time of trial, the lower court did not have the benefit of two amendments to the Mississippi Rules of Evidence which would also allow the introduction of the disputed testimony. In 1991, this court amended Miss.R.Evid. 803(4) and also added a 25th exception to Miss.R.Evid. 803.
Miss.R.Evid. 803(4), as amended, and Miss.R.Evid. 803(25), are as follows:
RULE 803. HEARSAY EXCEPTIONS; AVAILABILITY OF DECLARANT IMMATERIAL
(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively *922 finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term "medical" refers to emotional and mental health as well as physical health. (Emphasis added.)

... .
(25) Tender Years Exception. A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
The trial court found substantial indicia of the declarations' reliability, and Chad Hall testified.[9] If this case were remanded, both Miss.R.Evid. 803(4) and Miss. R.Evid. 803(25)[10] would support the admission of the disputed testimony.
When hearsay testimony is introduced into evidence, "[t]he Sixth Amendment right of the accused to be confronted with the witness against him must be observed." Parker v. State, 606 So.2d 1132, 1138 (Miss. 1992) (citing Leatherwood, 548 So.2d at 402.). See also Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). As this Court stated in the original Hall case, as well as in many other cases, the essence of confrontation is the right to cross-examine. Hall, 539 So.2d at 1346; see also Williams v. State, 595 So.2d 1299, 1307 (Miss. 1992); Prewitt v. State, 156 Miss. 731, 735, 126 So. 824, 825 (1930). Cross-examination is "the best tool we have for exposing truth." Hall, 539 So.2d at 1346. Mike Hall had the opportunity to cross-examine each of the state's witnesses. His accuser, Chad Hall, was cross-examined at length. In attacking Chad's credibility, the defendant thoroughly questioned him about his surroundings during the time of the alleged abuse. He was questioned about his use of anatomically correct dolls and denied anyone told him how the dolls were supposed to work. Mike Hall had latitude to ask whatever he wanted of Chad. His right of confrontation *923 was satisfied. The trial court's admission of this testimony was proper and is affirmed.

Issue D: Did the court err in allowing the indictment to be amended?
The defendant objects to two amendments of the indictment against him. The original indictment alleged that the sexual battery took place "on or about and between August 1, 1984 and September 30, 1984." Prior to the first Hall trial, the state was allowed to amend the indictment to read "on or about and between the 1st day of August, 1984 and November 15, 1984." Finally, before re-trial, the state was allowed to amend the indictment to read "on or about and between the first day of October, 1984, and the 30th day of November, 1984." In a confusing argument, the defendant apparently claims that he was denied a trial de novo because the state's amendment only amended the second amendment and did not amend the original indictment.
The argument has no merit.

Issue E: Did the court err by allowing Chad and Keith Hall to testify as competent witnesses?
Hall argues that because Chad and Keith Hall are in therapy, they are incompetent to testify. His argument is really no more complex than that. Hall objects to the particularly damaging testimony of his sons but fails to provide support for his protestations. The trial judge's decision to allow Chad and Keith Hall to testify is upheld.

Issue F: Residual Objections.
Hall, in an attempt to include as many objections as possible, lumped several arguments into this last issue. They include: (1) improper usage of anatomical dolls before the jury; (2) the sentencing of the defendant; (3) discovery violations; and (4) other errors during the entire course of this case.
(1) Improper usage of anatomical dolls
Hall contends that the use of anatomically correct dolls during the course of the trial was impermissible, prejudicial, and inflammatory. This Court has addressed the use of dolls in Williams v. State, 539 So.2d 1049 (Miss. 1989) and Murriel v. State, 515 So.2d 952 (Miss. 1987). Both cases hold that the use of the dolls is a matter of discretion for the trial judge. See Williams, 539 So.2d at 1050; Murriel, 515 So.2d at 957. In the present case, the judge read from the Williams case and found that the use of the dolls was appropriate. Finding no abuse of discretion, his decision is upheld.
(2) The sentencing of the Defendant
In the first Hall decision, Hall was sentenced to 25 years in the custody of the Mississippi Department of Corrections. On re-trial, Hall was again sentenced to 25 years. Hall claims that the second sentence was in error because a second pre-trial report was not provided to the judge.
The judge stated that he doubted a new pre-trial report would yield any additional information. This Court finds no reversible error in this decision.
This Court has carefully examined the other assignments of error and finds no merit to them, either individually or collectively.
The conviction of Mike Hall of the crime of sexual battery and sentence of 25 years on the Mississippi Department of Corrections is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and SULLIVAN, PITTMAN, BANKS and McRAE JJ., concur.
DAN M. LEE, P.J., dissents without written opinion.
ROBERTS, J., not participating according to Supreme Court Internal Rules.
NOTES
[1] The name of the agency has since been changed to the Mississippi Department of Human Services. Miss. Code Ann. § 43-1-1 (1992).
[2] 702: TESTIMONY BY EXPERTS
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
[3] Quimby, at 746-47.
[4] Quimby, at 746-47.
[5] Quimby employs the same analysis for similar testimony. Quimby, at 746-47.
[6] See In the Interest of C.B., 574 So.2d 1369, 1373 (Miss. 1990). But cf. Mitchell v. State, 539 So.2d 1366, 1370-1371 (Miss. 1989).
[7] Quimby, at 747.
[8] Quimby, at 747; See also Sanders v. State, 586 So.2d 792, 794-795 (Miss. 1991); In the Interest of C.B., 574 So.2d at 1373; Leatherwood v. State, 548 So.2d 389, 390-392 (Miss. 1989); Cummins v. State, 515 So.2d 869, 873 (Miss. 1987).
[9] In a child abuse case with very similar testimony, this Court in Baine v. State, 606 So.2d 1076 (Miss. 1992), found that Miss.R.Evid. 803(4) and Miss.R.Evid. 803(25) would allow the admission of the testimony if the case were tried on remand.
[10] This Court in Griffith v. State, 584 So.2d 383, 388 (Miss. 1991) analyzed the tender years exception and provided some guidance as to whether hearsay statements bear guarantees of trustworthiness. This Court quoted from Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990):

The state and federal courts have identified a number of factors that we think properly relate to whether hearsay statements made by a child witness in child sexual abuse cases are reliable. See, e.g., State v. Robinson, 153 Ariz. 191, 201, 735 P.2d 801, 811 (1987) (spontaneity and consistent repetition); Morgan v. Foretich, 846 F.2d 941, 948 (CA4 1988) (mental state of the declarant); State v. Sorenson, 143 Wis.2d 226, 246, 421 N.W.2d 77, 85 (1988) (use of terminology unexpected of a child of similar age); State v. Kuone, 243 Kan. 218, 221-222, 757 P.2d 289, 292-293 (1988) (lack of motive to fabricate). Although these cases (which we cite for the factors they discuss and not necessarily to approve the results that they reach) involve the application of various hearsay exceptions to statements of child declarants, we think the factors identified also apply whether such statements bear `particularized guarantees of trustworthiness' under the Confrontation Clause. These factors are, of course, not exclusive, and courts have considerable leeway in their consideration of appropriate factors. We therefore decline to endorse a mechanical test for determining `particularized guarantees of trustworthiness' under the Clause. Rather, the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.
Idaho v. Wright, 497 U.S. at 821, 110 S.Ct. at 3150, 111 L.Ed.2d at 656.
The trial judge weighed the factors he felt were relevant in finding the testimony admissible under Miss.R.Evid. 803(24). His finding of trustworthiness would also satisfy Miss.R.Evid. 803(25).