# IN THE COURT OF APPEALS 8/6/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-KA-00488 COA

**RONALD WINFRED MORGAN**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. GEORGE C. CARLSON, JR.

COURT FROM WHICH APPEALED: CIRCUIT COURT OF DESOTO COUNTY

ATTORNEY FOR APPELLANT:

SUSAN M. GUERIERI

ATTORNEY FOR APPELLEE:

ATTORNEY GENERAL MIKE MOORE,

BY: JOLENE M. LOWRY

DISTRICT ATTORNEY: ROBERT L. WILLIAMS

NATURE OF THE CASE: CRIMINAL

TRIAL COURT DISPOSITION: CONVICTED OF AGGRAVATED ASSAULT AND
SENTENCED TO SERVE 10 YEARS IN MDOC WITH 5 YEARS SUSPENDED PENDING
FURTHER GOOD BEHAVIOR.

BEFORE THOMAS, P.J., DIAZ, AND PAYNE, JJ.

THOMAS, P.`J., FOR THE COURT:

Ronald Morgan was convicted of aggravated assault and sentenced to serve ten years in the Mississippi Department of Corrections. From this conviction he appeals to this Court assigning five alleged errors. Finding his appeal to be without merit, we affirm.

FACTS

On the evening of June 6, 1992, Ronald Morgan went to Hoover's, a bar in DeSoto County, Mississippi. While at the bar an altercation developed between Morgan and Johnny Lofton. At that point, Morgan pulled a pocket knife from his rear pocket and stabbed Lofton in the chest.

There were four people present who witnessed the incident: Carol Farmer, girlfriend of Lofton; Darrell Patrick, a friend of Morgan; Rita Douglas and Tom Reeves, two uninvolved bystanders, who testified that they saw Morgan make a stabbing motion toward Lofton's chest, and then witnessed Lofton fall to the ground, bleeding.

After stabbing Lofton, Morgan, along with his friend Patrick fled the scene. The next day Morgan and Patrick went to the DeSoto County Sheriff's Office where, after being advised of his rights and after signing a waiver of rights form, Morgan confessed to stabbing Lofton. Initially Morgan attempted to portray the stabbing as an act of self-defense; however, mid-way through the statement, he stated that he wanted to come clean and admitted to being the aggressor. After Morgan gave his statement, Patrick also gave a statement to the police regarding what he had witnessed. After giving his statement, Patrick returned to his home to retrieve the knife used in the stabbing and turned it over to the police.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN OVERRULING MORGAN'S MOTION TO SUPPRESS HIS CONFESSION?

Prior to trial, Morgan filed a motion with the trial court to suppress the statement he made in the presence of Detective Martin of the DeSoto County Sheriff's Department. The statement in question was given after Morgan had turned himself in to the police, been read his Miranda warnings, and had signed a waiver of rights statement. In his motion, Morgan argued that the statement he made to the police was "coerced" and that he was intoxicated at the time.

During the pretrial hearing, Morgan argued that he was pressured into giving a full confession by another officer who was present with Detective T.E. Martin during the interview. The other officer allegedly threatened Morgan with a higher bond if he did not cooperate.

Morgan testified that he did not feel intimidated into giving his statement to the police "because I came and turned myself in." However, he stated that the statements made by the other officer to him coerced him into giving a more detailed statement "than I probably would have had not [the officer] said these things."

In the pretrial hearing, the trial court took testimony from Detective Martin in order to establish who was present at the time the statement was given and whether there was any merit to Morgan's allegations. Detective Morgan testified that he, alone, interviewed Morgan and that although there were other detectives present in the room, because it is a joint office in which a few other detectives have their desks, that the conversation was solely between Morgan and himself.

Detective Scotty Wood, the officer who allegedly coerced Morgan in his statement, testified that he did not remember seeing or speaking to Morgan. He stated that it would be highly unusual for him to make statements about bond as a threat, as this is a matter usually left up to the trial judge.

The trial court, after hearing all the testimony from the officers present during the interview, made the following finding:

> So just from the facts before the Court, the testimony before the Court and using common sense and having to evaluate witnesses and demeanor and, again, the common sense aspect of it, the credibility issue in this particular case falls on the side of the State, so the Court finds the State has proven beyond a reasonable doubt the voluntariness of the statement given by this defendant, so that will be the ruling of the Court, and the motion to suppress will be denied.

We hold that the trial court properly followed the procedures for admitting a confession into evidence in the face of a challenge that it was given involuntarily. *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966). The State put forth the officer who took the statement, and even went so far as to track down the officer who allegedly made the threats to Morgan. Officer Martin denied that any threats were made, and Officer Wood denied ever speaking with Morgan. We hold that the statement was properly admitted into evidence.

Morgan next argues that, even if the statement was admissible, the trial court should have excluded portions of the statement wherein Morgan revealed that he had a drinking problem and a possible personality disorder, because such portions were unfairly prejudicial and irrelevant. In his confession Morgan stated the following:

> I am an alcoholic and dope addict. This incident happened because of my drinking problem which changes my whole personality. I need professional help because I cannot do it on my own. I have been to Whitfield in the past for evaluation. I am a borderline case for a personality disorder. I turned myself in hoping to get some professional help.

The trial judge overruled Morgan's motion to strike the above portions of Morgan's confession finding that the statement was made knowingly and intelligently after being given his *Miranda* rights.

The long standing rule in this State is that the relevancy and admissibility of evidence is left to the sound discretion of the trial court and may only be reversed upon a showing of an abuse of discretion. *Cooper v. State*, 628 So. 2d 1371, 1375 (Miss. 1993); *Hall v. State*, 611 So. 2d 915, 918 (Miss. 1992); *Wade v. State*, 583 So. 2d 965, 967 (Miss. 1991); *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990). We hold that the trial court did not abuse its discretion in refusing to strike the above portions of Morgan's confession.

II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO READ FROM A POLICE REPORT?

At trial, the State called to the stand Darrell Patrick, a lifelong friend of Morgan and an eyewitness to the assault. Patrick had previously made a statement to the police concerning the events that occurred on the night in question; however, during trial, Patrick's recollection of the events was not as vivid as it had been when he had made his prior statement. On direct, the State asked Patrick the following:

> Q. The knife, [Morgan] gave it to you or your wife?
>
> A. He give it to my wife.
>
> Q. He gave it to your wife. She cleaned it or washed it?
>
> A. I don't think she done any cleaning or washing. I believe all she done was took the closed pocket knife and set it up in the cabinet.
>
> . . . .
>
> Q. Do you recall talking to Detective Tommy Martin?
>
> A. Yes, sir.
>
> Q. He was asking you questions about, as you refer to it, the incident; is that correct?
>
> A. Yes, sir.
>
> Q. Would it also be equally fair to call it the stabbing?
>
> A. I'm not sure --
>
> . . . .
>
> Q. Well, did you see a stabbing?
>
> A. No, sir, I didn't actually see a stabbing.
>
> Q. You didn't actually see a stabbing?
>
> A. No, sir.
>
> Q. You didn't see a knife enter a human being's body?

A. No, sir.

. . . .

Q. I'm going to read something to you and then ask you if you can remember it or not.

MR. VANDERBURG: Your Honor, on the record, now, we're going to object to this reading of these notes from this officer. We think still it's going to be hearsay. If he wants to ask him a question about these notes, but just reading this statement that the officer -- this is a statement that this man hasn't signed but apparently just notes from an officer

THE COURT: Let's just hear a question.

MR. KELLY: Your Honor, I'm simply trying to refresh the witness' memory. It's not hearsay. He was present.

THE COURT: I know. But just go ahead and ask him a question based on the statement.

Q. I'm going to read you something, quote, When [Morgan] and [Patrick] returned home after the stabbing incident, the knife was turned over to [Patrick's] wife, Barbara. The knife was reportedly cleaned by Barbara and held in her possession until obtained by her husband [Patrick], Dee Dee --

MR. VANDERBURG: Objection. We move for a mistrial. He did exactly what I thought you told him not to do, Your Honor. He read the statement. You told him to ask the man a question. And now he just read this statement of a police report to this man. I'm going to move for a mistrial.

THE COURT: At this point I'll overrule the objection and see what the response is to that.

. . . .

Q. Did you tell Detective Martin that you and Mr. Morgan went to your home after the stabbing?

A. I don't remember if I told Mr. Martin that or not.

Q. Did you tell Detective Martin that the knife was given to your wife, Barbara?

A. No, sir. No, sir. I didn't know that the knife was given to Barbara, my wife.

Q. Did you tell Detective Martin that the knife was cleaned by Barbara?

A. No, sir.

. . . .

Q. You don't remember telling Detective Martin those things?

A. No, sir. I did not tell Officer Martin those things.


Morgan argues that the reading of a police report into evidence constitutes the admission of hearsay,

and should have been grounds for a mistrial. We disagree with Morgan. In *Brent v. State*, 632 So.2d 936, 941 (Miss. 1994) our supreme court stated:

> The decision to declare a mistrial is within the sound discretion of the trial judge. *See Arizona v. Washington*, 434 U.S. 497, 512, 98 S. Ct. 824, 834, 54 L. Ed. 2d 717 (1978); *Grandberry v. Bonner*, 653 F.2d 1010 (5th Cir.1981). To find error from a trial judge's failure to declare a mistrial, there must have been an abuse of discretion. *Jones v. State*, 398 So. 2d 1312, 1318 (Miss. 1981); *Schwarzauer v. State*, 339 So. 2d 980, 982 (Miss. 1976).

Furthermore, the long standing rule in this State is that the trial court has a wide range of discretion in determining the admissibility of evidence. *Cooper v. State*, 628 So. 2d 1371, 1375 (Miss. 1993); *Hall v. State*, 611 So. 2d 915, 918 (Miss. 1992); *Wade v. State*, 583 So. 2d 965, 967 (Miss. 1991); *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990).

We cannot say that the trial court abused its discretion in allowing the State to read from the police report, and in failing to grant a mistrial. Morgan is correct in his argument that the police report constitutes hearsay; however such report would be admissible hearsay as a prior inconsistent statement under Mississippi Rule of Evidence 613. "If [Patrick] had given testimony differing from [his] prior inconsistent statements, in material particulars, then the prosecution would have had the prerogative of impeaching [him] by confronting [him] with [his] prior inconsistent statements." *Hansen v. State*, 592 So.2d 114, 133 (Miss. 1991). "[I]mpeachment with prior inconsistent out-of-court statements is proper 'so long as the statement made in court is one relevant to the issue in the case and therefore not collateral.'" *Cooper v. State Farm Fire & Cas. Co.*, 568 So. 2d 687, 691 (Miss. 1990).

While it would have been better for the State to ask specific questions concerning the statement Patrick made to the police, and then bring in the statement from Detective Martin to impeach Patrick through a prior inconsistent statement, we do not find that the procedure the State used warrants a mistrial.

## III. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

Our scope of review in determining whether a verdict was against the overwhelming weight of the evidence is limited and has been stated many times before and need not be restated here. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993); *McFee v. State*, 511 So. 2d 130, 133-34 (Miss. 1987); *Wetz v. State*, 503 So. 2d 803, 812 (Miss. 1987). Suffice to say that the eyewitness testimony coupled with Morgan's own confession provided ample evidence to support the conviction.

## IV. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW DEFENSE COUNSEL TO INDEPENDENTLY INTERVIEW A JUROR REGARDING JURY MISCONDUCT?

A couple of days after the end of Morgan's trial, one of the jurors telephoned a bailiff and told him that she had felt pressured into voting guilty during the deliberations. The trial judge informed both counsels of the incident and informed them that because he was not sure whether she was pressured from other jurors or whether she was pressured extraneously, the judge decided that he needed to interview the juror in front of both counsels to determine exactly what occurred. He then informed both counsels that, under the laws of this State, if it turns out that the juror was influenced internally by other jurors then that fact could not be used to impeach the verdict. M.R.E. 606(b).

After interviewing the juror, the trial court made the following finding:

> It's clear in the Court's mind that she yielded not because of any information she may have learned about the place where this happened but because of the jury deliberations and it got down to her and she decided to go ahead and vote, and that clearly falls under the part of the rule that says that the Court cannot receive information or consider such information in setting aside a verdict.

> The Court is satisfied that what she did say about some of the jurors having been there and knew it was kind of a rough, the Court is satisfied that is not the type of extraneous prejudicial information or outside influence that would cause the Court to set aside the verdict. The Court, considering the rule and the case law, feels very strongly that it would take more than what is before the Court to set aside a jury verdict that the Court is satisfied has been properly instructed and considered the evidence and the law. The motion in that regard would be denied as far as any improper information getting to the jury, outside information, extraneous information that would justify setting aside the verdict.

The trial court was correct in its ruling. In this case, the jury returned a verdict of 12-0; each juror being polled, each responding that his/her verdict was guilty. After the verdict was entered one juror comes forward and tells the court that her fellow jurors had persuaded her to vote guilty. Under Mississippi Rules of Evidence 606(b), this information cannot be used to impeach the verdict. *See Folk v. State*, 576 So. 2d 1243, 1250 (Miss. 1991); *Capler v. State*, 237 So. 2d 445, 451-52 (Miss.1970). This issue is without merit.

**THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE TO SERVE 10 YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH 5 YEARS SUSPENDED PENDING FURTHER GOOD BEHAVIOR IS AFFIRMED; THE FIVE (5) YEARS TO BE SERVED AS AN HABITUAL OFFENDER PURSUANT TO SECTION 99-19-81 OF THE**

MISSISSIPPI CODE. COSTS ARE TAXED TO APPELLANT.


FRAISER, C.J., BRIDGES, P.J., BARBER, COLEMAN, DIAZ, KING, McMILLIN, PAYNE, AND SOUTHWICK, JJ., CONCUR.