989 So.2d 910 (2007)
James Paul DAHL, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00605-COA.
Court of Appeals of Mississippi.
December 11, 2007.
Rehearing Denied May 6, 2008.
Certiorari Denied August 21, 2008.
*912 Dustin Norman Thomas, Ocean Springs, attorneys for appellant.
Office of the Attorney General by Stephanie Breland Wood, attorney for appellee.
Before MYERS, P.J., GRIFFIS and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. A Jackson County Circuit Court jury found James Paul Dahl guilty of two counts of capital murder in the deaths of Harold Neal and Cheryl Sellers. He was sentenced to two life sentences in the custody of the Mississippi Department of Corrections, the sentences to run concurrently. He now appeals that verdict, asserting that he received ineffective assistance of counsel, that the verdict is against the overwhelming weight of the evidence, and that the court erred in refusing to grant his motions for continuance and various motions to suppress evidence. Finding no error, we affirm the circuit court.

FACTS
¶ 2. In May of 2003, James Dahl and Eddie Hogancamp worked together at Dahl's brother, Gerry's, automobile repair shop in Vancleave, Mississippi. At that time, Hogancamp rented and lived in a houseboat owned by Gerry Dahl in Moss Point, Mississippi. In addition to their work relationship, Hogancamp and James Dahl (Dahl) also frequently did drugs together. The extent of Dahl's drug use is disputed; he claims he only smoked marijuana. Hogancamp, however, claims that the two smoked crack cocaine and methamphetamine together on occasion as well.
¶ 3. During Memorial Day weekend of 2003, Dahl's youngest daughter was hospitalized with asthma problems, and Dahl's wife was staying with her at the hospital in Ocean Springs. That Sunday, May 25, 2003, Dahl called Hogancamp to see if he had any marijuana to smoke. Hogancamp indicated that he did, and Dahl drove to Hogancamp's houseboat. Most of the events following Dahl's arrival at the houseboat are in dispute. Hogancamp admitted that he killed both Cheryl Sellers, by stabbing her repeatedly, and Harold Neal, by shooting him. The disputed facts relate to James Dahl's involvement in the planning of the murders and his knowledge beforehand, as well as his involvement in the murder of Neal.
*913 ¶ 4. Hogancamp testified that once Dahl arrived at the houseboat, they hatched a plan to rob and kill Hogancamp's crack cocaine supplier, Neal, and that the events of that day were part of their common plan. Dahl claims that he knew nothing of Hogancamp's plan to kill Neal, but he admits to helping Hogancamp in an effort to conceal the crimes after they were completed. Dahl claims he helped Hogancamp move Neal's car to Biloxi, that he helped move the bodies of Neal and Sellers to an island behind the houseboat, and that he helped clean blood from the crime scene.
¶ 5. Hogancamp's testimony at trial revealed that after Dahl arrived at the houseboat, the two men sat outside and smoked marijuana while they fished. Their minds soon turned to finding crack cocaine. Hogancamp was in debt to his crack dealer, Neal, and knew that Neal would not give him any drugs without being paid for them. Hogancamp claims that he and Dahl then worked out a plan to lure Neal to the houseboat. Hogancamp called Neal to come over, claiming that he had the money he owed him. Hogancamp and Dahl moved Dahl's car from the houseboat to the nearby Piggly Wiggly parking lot so Neal would not suspect that anyone else was at the houseboat when he arrived. Neal called when he was close to the houseboat, and Dahl waited in another room so as not to be detected by Neal. Their plan was that as Hogancamp talked to Neal, Dahl would come out and hit Neal with a baseball bat, and they would then kill him and take the crack from him. Neal arrived with Sellers, who was unexpected. Hogancamp retrieved some marijuana from upstairs in the houseboat for the three to smoke together. At that time, Dahl came out of the bedroom and hit Neal with the bat. The two men struggled. Meanwhile, Hogancamp struggled with Sellers and stabbed her several times with his pocket knife, killing her. After she fell to the floor, Hogancamp grabbed his gun and shot Neal, who had fallen to the floor in his struggle with Dahl.
¶ 6. Dahl and Hogancamp then moved the victims' bodies to another room. Dahl searched through Neal's pockets and found some cash, but no drugs. They also found the keys to Neal's car. After splitting the money they took from Neal, the two men decided to move Neal's car to Biloxi. Hogancamp drove Neal's car, and Dahl drove Hogancamp's car. They rode back from Biloxi in Hogancamp's car to the Piggly Wiggly, where Hogancamp bought cleaning supplies, and Dahl picked up his car. Dahl drove his car back to the houseboat and helped Hogancamp move the bodies out to the island behind the houseboat. Dahl also helped Hogancamp clean the blood from the crime scene. After their efforts to conceal their crimes, Hogancamp drove Dahl to the hospital to be with his wife and daughter, but kept Dahl's car. Dahl had to return to the houseboat to retrieve the car the next day.
¶ 7. The two men worked several days the next week at Gerry Dahl's shop, having brief discussions regarding moving the bodies to a more secret location, but Dahl never returned to the scene. Hogancamp left town at the end of the week to hide in Tennessee, where he had family. Once Hogancamp was out of the area, Dahl apparently explained to his brother, Gerry, some of the events related to the murders. Gerry went to the houseboat to view the scene, and then called authorities.
¶ 8. At the urging of his family, Hogancamp eventually turned himself in to the sheriff in Weakley County, Tennessee, on June 7, 2003. After giving several conflicting statements to law enforcement officers in Tennessee and Moss Point, Mississippi, Hogancamp admitted that he had killed the victims and that Dahl knew and had *914 helped him plan the crimes in order to obtain crack cocaine. Dahl turned himself in to law enforcement authorities in Moss Point on June 8, 2003. He also gave a statement to police confirming many details of the crimes, but denied any knowledge of a plan to kill Neal or Sellers. Hogancamp pleaded guilty to the murders and testified against Dahl at trial.

DISCUSSION

I. Whether Dahl received ineffective assistance of counsel.
¶ 9. Dahl asserts in his appeal that he received ineffective assistance of counsel, in violation of his rights under the Sixth Amendment to the United States Constitution and article 3, section 26 of the Mississippi Constitution. Dahl supports his assertion that his trial counsel was ineffective with several examples, including his attorney's failure to fully investigate through discovery motions what information the State had related to the case; his failure to interview certain witnesses and secure their appearance and testimony at trial; his failure to object to a jury instruction or to offer certain jury instructions on his behalf; his failure to ask follow-up questions of witnesses; and his failure to move for a mistrial on the ground that the jury deliberated as Hurricane Katrina was growing stronger. He also claims that his trial counsel was physically exhausted, and, therefore, ineffective.
¶ 10. For an ineffective assistance of counsel claim to succeed, a defendant must satisfy the two-pronged test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Stringer v. State, 627 So.2d 326, 328 (Miss.1993). The test requires that the defendant first show that counsel was deficient; he must then show that the deficiency prejudiced his defense. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990) (citing Strickland, 466 U.S. at 687, 104 S.Ct. 2052). Further, the defendant must overcome a "strong but rebuttable presumption that counsel's conduct falls within a broad range of reasonable professional assistance." McQuarter, 574 So.2d at 687 (citing Gilliard v. State, 462 So.2d 710, 714 (Miss.1985)).
¶ 11. Dahl is able to give several examples of what he perceives to be his counsel's deficiencies. He is not, however, able to satisfy the second prong of the Strickland test, which requires a showing that counsel's deficient performance prejudiced his defense. To satisfy this part of the test, Dahl would have to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Ransom v. State, 919 So.2d 887, 890(¶ 12) (Miss.2005) (quoting Foster v. State, 687 So.2d 1124, 1129-30 (Miss.1996)). Dahl argues that each of counsel's errors severely prejudiced his defense, but fails to convince this Court of a reasonable probability that he would have had a better result but for counsel's errors. Because Dahl cannot satisfy the second prong of Strickland, we find his argument of ineffective assistance of counsel to be without merit.

II. Whether an improper jury instruction regarding accomplice testimony is plain error.
¶ 12. Dahl argues in his appeal that the improper jury instruction is evidence of trial counsel's ineffectiveness, and not that it is plain error. This issue is of particular concern to the Court, however, and we address it separately.
¶ 13. The jury instruction prepared by the trial court reads as follows:
The court instructs the Jury that if you find the testimony of James Edward *915 Hogancamp, an alleged accomplice of the Defendant in this case, to be uncorroborated by other evidence, then and in that event you should view such testimony with great care, caution and suspicion, and that it must be reasonable and not improbable or self-contradictory or substantially impeached. You may give the testimony of an accomplice such weight and credit as you deem it to be entitled in light of this principle.
Dahl argues that the jury instruction is improper and that the jury should have been instructed to consider the accomplice testimony with great care, caution, and suspicion, regardless of whether it was or was not corroborated. Neither the State nor the defense objected to the jury instruction at trial.
¶ 14. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Johnson v. State, 823 So.2d 582, 584(¶ 4) (Miss. Ct.App.2002). The long-established rule in Mississippi is that the testimony of a convicted accomplice and felon "must be viewed with great caution and suspicion. Where it is uncorroborated, it must also be reasonable, not improbable, self-contradictory or substantially impeached." Jones v. State, 368 So.2d 1265, 1267 (Miss.1979).
¶ 15. The trial judge has discretion in deciding whether or not he will even grant an accomplice jury instruction. Wheeler v. State, 560 So.2d 171, 173 (Miss. 1990) (quoting Derden v. State, 522 So.2d 752, 754 (Miss.1988)). That discretion is not absolute and may be abused in certain instances. Id. When determining whether a trial judge has abused his discretion in failing to grant an accomplice jury instruction, there are two factors to consider: (1) whether the witness was an accomplice and (2) whether his testimony was uncorroborated by other evidence. Id. It is clear from the record and the testimony that Hogancamp was, in fact, an accomplice in the murders of Neal and Sellers. There is also other evidence to corroborate Hogancamp's testimony.
¶ 16. Hogancamp's version of events was corroborated by Dahl's own testimony. Dahl admitted that he was present before Neal and Sellers arrived, that he was present during the actual murders, and that he actively participated in the efforts to conceal the crimes. Dahl admitted leaving his car at the Piggly Wiggly so no one would suspect his presence on the houseboat. Dahl admitted that he knew that Neal was coming over to the houseboat. There is also physical evidence from the houseboat related to where blood pooled on the floor that tends to support Hogancamp's testimony. Because there is substantial evidence to support Hogancamp's testimony regarding Dahl's involvement in the crimes, we find no plain error in the giving of the instruction.

III. Whether the verdict was against the overwhelming weight of the evidence.
¶ 17. Dahl next argues that the guilty verdict is against the overwhelming weight of the evidence. He did not, however, assert this error in his motion for new trial, and he is procedurally barred from arguing it before this Court. An argument challenging the weight of the evidence "must first be raised in the defendant's motion for a new trial." Beckum v. State, 917 So.2d 808, 813(¶ 14) (Miss.Ct. App.2005). Therefore, we decline to rule on this assignment of error.
¶ 18. Dahl argues in his response to the State's brief that the omission of this argument from Dahl's motion for new trial or *916 for judgment notwithstanding the verdict is further evidence of his trial counsel's ineffectiveness. This omission may show deficient performance of Dahl's trial counsel, but, once again, Dahl is unable to satisfy the second prong of the Strickland test and show that this error prejudiced his defense.

IV. Whether the court erred in refusing to grant defendant's various motions for continuance and to suppress evidence.
¶ 19. "The decision to grant or deny a motion for continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice." Smiley v. State, 815 So.2d 1140, 1143-44(¶ 14) (Miss.2002) (quoting Coleman v. State, 697 So.2d 777, 780 (Miss. 1997)). Also, "[t]he admissibility of evidence rests within the trial court's discretion." Bell v. State, 963 So.2d 1124, 1131(¶ 14) (Miss.2007) (citing Hall v. State, 611 So.2d 915, 918 (Miss.1992)). The trial court's ruling will only be reversed "where such discretion has been abused and a substantial right of a party has been affected." Id. (citing Johnson v. State, 666 So.2d 499, 503 (Miss.1995)).
¶ 20. Dahl received notice three days before trial that Hogancamp would testify regarding statements Dahl made to him when the two were housed together in the Issaquena County Jail. Dahl requested a continuance in order to investigate Hogancamp's allegation, or, alternatively, that the court prevent Hogancamp from testifying regarding that statement. Dahl claims that, because the State supplemented discovery so close to trial, he was entitled to a continuance in order to investigate. He cites Middlebrook v. State, 555 So.2d 1009, 1011 (Miss.1990), which states: "We have repeatedly held that an accused's remedy for tardy disclosure of that to which he was entitled in pre-trial discovery is a continuance reasonable under the circumstances." (citations omitted) (emphasis added). The court granted Dahl until noon the next day in order to investigate Hogancamp's statements. Dahl was not entitled to have the trial postponed indefinitely while he looked for something useful. The Mississippi Supreme Court has stated that there will be cases "where postponement of a day or two, or in some cases even an hour or two, will suffice." Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986).
¶ 21. Dahl also asked for a continuance in order to have an expert examine the audiotape of his statement to police, or, to have it suppressed. Dahl claims that the tape was tampered with and portions deleted. The judge, after listening to the arguments of counsel and to the tape itself, ruled that the tape was admissible and denied the continuance. Dahl and his attorney had possession of the tape well in advance of trial and knew of its existence long before they claim to have received it through discovery. The trial court acted within its discretion in refusing Dahl more time to have the tape examined by an expert.
¶ 22. Dahl has not shown that the trial judge abused his discretion in denying his motions. He has not shown that a substantial right has been affected, nor has he demonstrated that the judge's decisions resulted in manifest injustice. Because Dahl cannot show any reversible error in his case, we affirm his capital murder conviction and sentence in the deaths of Sellers and Neal.
¶ 23. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, CAPITAL MURDER AND SENTENCE OF LIFE; COUNT II, CAPITAL MURDER *917 AND SENTENCE OF LIFE TO RUN CONCURRENTLY TO SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.