NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

v.

MLADEN RISTIC,
*Appellant*.

No. 1 CA-CR 19-0137

FILED 7-28-2020

Appeal from the Superior Court in Maricopa County
No.  CR2017-152662-001
The Honorable Kathleen H. Mead, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza Ybarra
*Counsel for Appellee*

Daniel R. Raynak, PC, Phoenix
By Daniel R. Raynak
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**M O R S E**, Judge:

**¶1**        Mladen Ristic appeals his convictions and sentences for sexual assault and sexual abuse.  For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        We view the facts in the light most favorable to sustaining the jury verdicts and resolve all reasonable inferences against Ristic.  *See State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

**¶3**        Ristic and the Victim are half-siblings that lived in the same house.  In November 2017, Ristic sexually assaulted the Victim.  During their investigation, police recorded three confrontation calls between Ristic and the Victim.  When told by the Victim "I didn't really want to have sex with you," Ristic replied, "Yeah, I'm sorry."  She then asked, "but can you at least tell me why, though?"  He replied, "like I said, you're not ugly, and I needed some companionship, I guess."  In the calls, Ristic never explicitly admitted to sexual assault, but when the Victim asked him "why did you make me do that, though," and "why did you make me have oral sex with you," Ristic did not state that the contact was consensual.  Instead, he said it "just happens real quick" and "I don't know how to answer that."

**¶4**        When questioned by police, Ristic denied any sexual contact.  But at trial, he admitted sex with the Victim and claimed the encounter was consensual.  Police obtained deoxyribonucleic acid ("DNA") samples from the Victim's genitalia that matched Ristic.  They also obtained DNA from Ristic's genitalia that matched the Victim.

**¶5**        At trial, the State presented testimony from the Victim, an expert on behavior in adult abuse victims, the nurse that treated the Victim, the Victim's friend with whom the Victim spoke on the night of the assault, a certified forensic computer examiner, and a DNA analyst.

**¶6**        The jury convicted Ristic on all counts.  The court denied his post-judgment motion for a new trial based on an alleged disclosure

violation.  The court sentenced Ristic to consecutive terms of 5.25 years imprisonment for the three sexual assault convictions (Counts 1, 3, 4) and 1.5 years for the sex abuse conviction (Count 2), to be served concurrently with Count 1.  Ristic timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

¶7          Ristic raises eight issues on appeal.

## I.          Evidence of Prior Bad Acts.

¶8          First, Ristic argues that the court erred in allowing testimony regarding prior bad acts.  *See* Ariz. R. Evid. 404(b) (prohibiting the introduction of other bad acts into evidence absent a specific exception).  The Victim testified that Ristic "slapped my butt" the day before the assault and that Ristic stole internet from the neighbors.  Because Ristic did not object to the testimony at trial, "we will not reverse unless the court committed error that was both fundamental and prejudicial."  *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).  Even assuming the admission of the statements was error, Ristic cannot show both fundamental and prejudicial error.

¶9          To establish prejudice, Ristic must prove that, absent the alleged error, there is a reasonable probability that he could have received a different verdict or sentence.  *Id.* at 144, ¶ 29.  "Although evidence of prior crimes generally is not admissible, courts will not reverse a conviction based on the erroneous admission of evidence unless there is a reasonable probability that the verdict would have been different had the evidence not been admitted."  *State v. Dann*, 205 Ariz. 557, 570, ¶ 44 (2003) (citations and quotation marks omitted).  Ristic argues the testimony hurt his credibility and that "[p]rior bad acts, by their very nature, are prejudicial."

¶10         Ristic offers only speculation and no record evidence for his argument. *See State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (noting on fundamental error review, defendant must affirmatively prove prejudice by referring to facts in the record and may not rely upon speculation).  Moreover, the prior acts were far less egregious than the charged offense. *See State v. Via*, 146 Ariz. 108, 122 (1985) (finding improper other-act evidence was harmless when it concerns "conduct far less egregious than that with which [defendant] was charged."); *see also State v. Vega*, 228 Ariz. 24, 29-30, ¶ 22 (App. 2011) ("Significantly, the single act at the beach about which the older victim briefly testified was far less

egregious than the acts both victims testified [the defendant] committed a few months later."). Finally, the evidence against Ristic was overwhelming. *See State v. Ramos*, 235 Ariz. 230, 237, ¶ 20 (App. 2014) (finding defendant failed to prove prejudice when there was overwhelming evidence of guilt).

**¶11**　　　　Accordingly, Ristic has not established fundamental error resulting in prejudice.

## II.　　Exclusion of Text Messages.

**¶12**　　　　Defense counsel sought to question the Victim about a text message sent three months before the assault. The message is not in our record. *See State v. Rivera*, 168 Ariz. 102, 103 (App. 1990) ("An appellate court will not speculate about the contents of anything not in the appellate record."). The prosecutor informed the superior court that the message was from the Victim to one of her friends, "about her taking money for sex" but that "it's a conversation with these two girls are talking about pretending to be somebody online." When asked by the court why the message was relevant, defense counsel responded that "[t]he statement that she makes is a statement showing motive and bias." The court sustained the objection.

**¶13**　　　　Otherwise admissible evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Ariz. R. Evid. 403; *see also* A.R.S. § 13-1421 (limiting admissibility of "evidence of specific instances of the victim's prior sexual conduct"). Unfair prejudice may exist "if the evidence has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror." *State v. Mott*, 187 Ariz. 536, 545 (1997). "The trial court has considerable discretion in determining the relevance and admissibility of evidence," and its ruling will not be disturbed "absent a clear abuse of discretion." *State v. Amaya–Ruiz*, 166 Ariz. 152, 167 (1990). Abuse of discretion is "an exercise of discretion which is manifestly unreasonable, exercised on untenable grounds or for untenable reasons." *State v. Woody*, 173 Ariz. 561, 563 (App. 1992) (citation omitted).

**¶14**　　　　The Victim sent the text to a third party long before the assault. The inflammatory nature of the text created a risk of unfair prejudice. Furthermore, the court admitted other texts between Ristic and the Victim. Using these texts, defense counsel cross-examined the Victim regarding any potential financial motives for the sexual contact and argued to the jury that the Victim was consenting to the sexual acts in return for money. The superior court did not abuse its discretion by excluding the text message.

## III.    Victim's State-of-Mind Testimony.

**¶15**        At trial, defense counsel cross-examined the Victim regarding why she felt depressed on the day of the sexual assault.  The Victim explained she had learned that her romantic interest had a girlfriend and a child.  When counsel asked what the romantic interest had told the Victim, the court sustained the State's hearsay objection.  Ristic asserts on appeal that the testimony qualified under the state of mind exception to the hearsay rule.  Because Ristic did not raise this theory at trial, we review for fundamental error.  *See Escalante*, 245 Ariz. at 140, ¶ 12.

**¶16**        Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  Ariz. R. Evid. 801(c).  Hearsay is generally not admissible unless an exception applies.  Ariz. R. Evid. 802.  Ristic argues that the testimony was admissible under Arizona Rule of Evidence ("Rule") 803(3) to show the effect that the statement had on the listener's state of mind.  The State argues that the state of mind exception does not apply because that exception goes to the declarant's, not the listener's, state of mind.  *See* Ariz. R. Evid. 803(3).

**¶17**        Both parties' arguments miss the mark.  The statement was not hearsay because Ristic was not offering it for the truth of the matter asserted.  *See State v. Rivera*, 139 Ariz. 409, 413-14 (1984).  Ristic did not seek to introduce the statement to prove the existence of a romantic interest or a child but instead to prove the effect this news had on the Victim's state of mind.  *See Pub. Serv. Co. of Okla. v. Bleak*, 134 Ariz. 311, 320 (1982) (stating that "words offered as evidence of an utterance which caused a state of mind in the listener are not within the proscription of [Rule] 802").

**¶18**        But while the statement was not hearsay, it was not particularly relevant.  The defense offered the statement to show the Victim's mental state on the day of the sexual assault, but the Victim provided testimony about her mental state, stating that on the day of the assault she "was very depressed" and she was "upset because I found out that somebody I was in love with had a child."  Ristic fails to show whether and how the additional testimony would have mattered.  *See State v. Dunlap*, 187 Ariz. 441, 456-57 (App. 1996) (finding erroneous exclusion of cumulative evidence did not require reversal).  Any error was harmless.

## IV.    Admission of Expert Witness.

**¶19**        Next, Ristic argues the trial court erred by allowing the State to introduce "cold" expert testimony on behavior in adult abuse victims. We review a trial court's ruling on the admission of evidence for an abuse

of discretion. *State v. Haskie*, 242 Ariz. 582, 585, ¶ 11 (2017). And we review claims raised for the first time on appeal for fundamental, prejudicial error. *See Escalante*, 245 Ariz. at 140, ¶ 12.

**¶20** The Rules permit expert testimony if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Ariz. R. Evid. 702(a). Our supreme court directs that "expert testimony that explains a victim's seemingly inconsistent behavior is admissible to aid jurors in evaluating the victim's credibility." *Haskie*, 242 Ariz. at 586, ¶ 16; *see also State v. Salazar-Mercado*, 234 Ariz. 590, 594, ¶ 15 (2014) (holding that testimony that helps the jury understand possible reasons for victim's inconsistent reporting satisfies Rule 702(a)).

**¶21** Ristic complains that the expert testified based solely on her experience and had no scientific basis for her opinions. However, a witness may qualify as an expert based on experience alone. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *State v. Villalobos*, 225 Ariz. 74, 81, ¶ 25 (2010) ("A witness can qualify as an expert through requisite 'knowledge, skill, experience, training, or education.'" (quoting *State v. Davolt*, 207 Ariz. 191, 210, ¶ 70 (2004))); *see also* Ariz. R. Evid. 702 cmt. (2012) ("The amendment is not intended to . . . preclude the testimony of experience-based experts[.]").

**¶22** That happened here. The expert worked as a Police Crisis Intervention Specialist for the Scottsdale Police Department, had 29 years of experience working with victims of sexual assault, and regularly trained law enforcement on victimization and sexual-assault cases. The expert testified that stress hormones released during a sexual assault can cause a victim to experience dissociation which makes it difficult "to keep things in your mind in terms of memory, in terms of sequence or contextual information." Because the expert's testimony might have helped the jury understand possible reasons for any inconsistent reporting, her testimony satisfied Rule 702(a). *See Salazar-Mercado*, 234 Ariz. at 594, ¶ 15.

**¶23** On appeal, Ristic also argues that "[s]cientific research actually demonstrates the exact opposite, that a victim of an actual sexual assault will almost always recall the core details." However this goes to the weight of the testimony, not its admissibility. *See State v. Bernstein*, 237 Ariz. 226, 230, ¶ 18 (2015) (noting the adversarial system allows the opposing party to question the reliability and application of an expert's experience and knowledge). "When the evidence supporting a verdict is challenged on

appeal, an appellate court will not reweigh the evidence." *State v. Lee*, 189 Ariz. 590, 603 (1997).

**¶24** Therefore, the superior court did not abuse its discretion in permitting the expert's testimony.

**V.  Medical Hearsay Exception.**

**¶25** Ristic also argues the superior court should have excluded the hearsay testimony of the treating nurse. The nurse's testimony repeated statements made by the Victim describing the assault and identifying Ristic as the attacker. The admissibility of hearsay evidence is reviewed for an abuse of discretion. *State v. Bronson*, 204 Ariz. 321, 324, ¶ 14 (App. 2003).

**¶26** The medical hearsay exception applies to "[a] statement that (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Ariz. R. Evid. 803(4). "The rationale underlying the Rule 803(4) exception . . . is that doctors will seek and patients will give reliable information to further necessary medical treatment." *State v. Robinson*, 153 Ariz. 191, 199 (1987). A statement to a doctor concerning the events of a sexual assault "in most cases is pertinent to diagnosis and treatment," but the identity of the alleged attacker "would seldom, if ever, be sufficiently related." *State v. Jeffers*, 135 Ariz. 404, 421 (1983) (quoting *United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir. 1980)).

**¶27** Our courts use a two-part test to determine admissibility under Rule 803(4): first, whether the declarant's apparent motive aligned with receiving medical care; and second, whether it was "reasonable for the physician to rely on the information in diagnosis or treatment." *Robinson*, 153 Ariz. at 199 (quoting *Jeffers*, 135 Ariz. at 420-21).

**¶28** The record indicates that the Victim's statements to the nurse were elicited in the course of treatment and nothing in the record suggests that the Victim's "motive in making these statements was other than as a patient seeking [or at least needing] treatment." *Iron Shell*, 633 F.2d at 84. Considering all the circumstances, the Victim's statements to the nurse describing the assault meet the requirements of Rule 803(4). *See Jeffers*, 135 Ariz. at 420-21.

**¶29** The Victim's statement naming Ristic as her attacker requires further analysis. *See id.* at 421. The State argues the identity of the Victim's attacker was also relevant because the nurse had a responsibility to avoid placing her back into a dangerous environment where she was at risk. *See*

*Robinson*, 153 Ariz. at 200 (recognizing an exception to *Jeffers* in child sexual abuse cases); *see also State v. Sullivan*, 187 Ariz. 599, 602 (App. 1996) (expanding the *Robinson* exception to nonsexual child abuse cases). While *Robinson* left open the possibility that "sexual molestation by a father, other relative, or family friend may be different and require different treatment than those resulting from abuse by a stranger," 153 Ariz. at 200, we need not decide whether the testimony was admissible because any error was harmless.

**¶30**      Ristic concedes "there was no question that the Victim and the Defendant had sex." Thus, the hearsay testimony identifying Ristic addressed an undisputed issue and did not prejudice Ristic. *See State v. Williams*, 133 Ariz. 220, 226 (1982) (finding erroneous admission of hearsay evidence was harmless when issue is uncontested). Additionally, the Victim's hearsay statements introduced via the nurse were nearly identical to the testimony the Victim provided at trial, and the erroneous admission of cumulative evidence is also harmless error. *See id.*; *see also State v. Hoskins*, 199 Ariz. 127, 144, ¶ 66 (2000) (finding any error harmless where alleged hearsay statement was restated during declarant's testimony during trial).

## VI.   Disclosure of Raw Data.

**¶31**      Ristic argues the superior court erred in permitting testimony about a Skype call the Victim made on the night of the assault. Defense counsel cross-examined the State's certified forensic computer examiner who testified about a call the Victim described as a video call. The call log entered into evidence did not indicate that the call was a video call. On redirect, the witness testified that a review of the raw data was needed to verify the nature of the call. Defense counsel objected to the witness's conclusion based on hearsay and an alleged lack of disclosure regarding the raw data. The court overruled the objection and permitted the forensic expert to answer. The witness testified that he had verified "the data base that these existed, and it was a Skype call."

**¶32**      Ristic filed a motion for new trial raising this issue. During oral argument on the motion, the prosecutor said the defense was told about the data. Specifically, the prosecutor stated that the extraction report provided to the defense states that: "All data acquired during the examination will be retained by the Phoenix Police Department Digital Forensic's Investigation Unit, and is available for additional examination if requested." Defense counsel did not specifically rebut this claim. The superior court denied the motion because defense counsel was afforded the opportunity to extensively cross-examine the witness and argue the issue

to the jury. Although Ristic appeals the denial of his trial objection, he does not appeal the denial of the motion for new trial.

**¶33** On appeal, Ristic does not identify the disclosure rule allegedly violated by the State. Therefore, Ristic has waived the argument. *See State v. Henry*, 224 Ariz. 164, 172, ¶ 27 (App. 2010) (holding that failure to properly develop an argument results in waiver of that issue); *see also* Ariz. R. Crim. P. 31.10(a)(7).

**¶34** Even if we did not find the argument waived, and assuming the State was required but failed to disclose the raw data, Ristic shows no prejudice. *See State v. Tucker*, 157 Ariz. 433, 439 (1988) (providing that "even if there is a failure to remedy a discovery violation, a subsequent conviction will not be reversed on that account unless the defendant can demonstrate prejudice from the violation"). There was no dispute that the call was a Skype call. As defense counsel stated, "[t]he question[] was, was it an audio Skype call or was it a video Skype call?" Ristic argued to the jury that no Skype video call took place. He fails to show what prejudice resulted from the failure to review the data. Because the challenged testimony only stated that the call was a "Skype call" without reference to video, Ristic has not demonstrated prejudice from any discovery violation. Thus, we find no reversable error.

## VII. Deleted Text Messages.

**¶35** Ristic also argues the superior court erred when it precluded defense counsel's question about deleted text messages. Defense counsel asked the Victim's friend if the Victim had ever asked the friend to delete text messages. The court sustained the State's relevance objection. *See* Ariz. R. Evid. 402. The superior court's rulings on the admissibility of evidence are reviewed for an abuse of discretion. *Amaya–Ruiz*, 166 Ariz. at 167. We find no abuse of discretion.

**¶36** First, defense counsel's question at trial was not narrowed to the relevant time period and thus had little relevance to the issues before the jury. *See Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 90, ¶ 25 (App. 1998) (as corrected) ("Otherwise relevant evidence may be excluded if it is too remote in time from the proposition being proved.").

**¶37** Second, Ristic claims the question went to "the credibility of the Victim, who was trying to delete certain text messages." But Ristic never asked the Victim if she asked this friend to delete messages, nor did he attempt to offer the friend's messages as evidence, so the question had little impeachment value. *See Hernandez v. State*, 203 Ariz. 196, 200, ¶ 15 (2002)

(noting "impeachment evidence must be relevant under Rules 401 and 402").

**¶38** Finally, the Victim admitted deleting text messages on her own phone and testified on redirect that the "only text messages that were deleted on the phone were the ones between" the Victim and a different friend. Those deleted texts were admitted at trial. Ristic suggests that it was unfair to preclude his question about deleted text messages when the State was allowed to introduce the Victim's previously deleted text messages. But Ristic stipulated to the introduction of those deleted messages so his claims of unfairness are unfounded.

**¶39** Accordingly, we find no abuse of discretion.

## VIII. Alleged Prosecutorial Misconduct.

**¶40** Finally, Ristic asserts that statements by the prosecutor in closing argument constituted prosecutorial misconduct. Because Ristic did not object to the alleged misconduct at trial, we review for fundamental error. *See Escalante*, 245 Ariz. at 140, ¶ 12. "We will reverse a conviction for prosecutorial misconduct if (1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [the] defendant a fair trial." *State v. Velazquez*, 216 Ariz. 300, 311, ¶ 45 (2007) (citation and quotation marks omitted).

**¶41** Ristic argues the prosecutor committed prosecutorial misconduct by vouching for the honesty or dishonesty of witnesses. A prosecutor commits impermissible "vouching: (1) where the prosecutor places the prestige of the government behind its witness; [or] (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. Vincent*, 159 Ariz. 418, 423 (1989). In reviewing statements made during closing arguments, we look to the context as well as the entire record and the totality of the circumstances. *State v. Goudeau*, 239 Ariz. 421, 466, ¶ 196 (2016).

### A. Statements Summarizing Evidence.

**¶42** The first statements by the prosecutor Ristic challenges are:

"what he did was he lied and *we know he lied*, ladies and gentlemen, because the fact his DNA is found on her inner vaginal swab." (emphasis added).

"And as I said before, the one person *we know lied* is the defendant because when he talked to Detective Theriault, he said he didn't do anything other than maybe grope her . . . But ladies and gentlemen, the DNA proves otherwise." (emphasis added).

Ristic asserts that the statement "we know he lied" constituted prosecutorial misconduct because "credibility was paramount to the verdict."

**¶43** These statements were not vouching because they did not place the prestige of the government behind the evidence or suggest knowledge on the part of the government untethered to the evidence. Instead, the prosecutor made the comments when summarizing the inconsistencies between Ristic's statement to police — that he did not have sexual contact with the Victim and the DNA evidence showing that he had sexual contact with the Victim. *See, e.g., United States v. Ruiz*, 710 F.3d 1077, 1086 (9th Cir. 2013) (stating that it is permissible to use the words "we know" to describe the evidence where prosecutor "did so only to 'marshal evidence actually admitted at trial and reasonable inferences from the evidence, not to vouch for witness veracity or suggest that evidence not produced would support a witness's statements'" (quoting *United States v. Younger*, 398 F.3d 1179, 1191 (9th Cir. 2005))).

**¶44** Even if the prosecutor should not have used the phrase "we know," any error was not fundamental or prejudicial. In *State v. Acuna Valenzuela*, our supreme court found that a prosecutor's statement "[w]e know the defendant attempted to shoot and kill Perla," did not constitute fundamental error. 245 Ariz. 197, 218, ¶¶ 83-85 (2018). The court was concerned by the prosecutor's use of "we know" because of the "fine contextual line between the use of 'we know' inclusively, *i.e.*, to describe evidence and outline inferences from that evidence with the jury, and the use of 'we know' in an exclusive manner, *i.e.*, to refer to the State collectively." *Id.* at ¶ 85. But the court concluded that the pronoun usage, by itself, does not rise to the level of fundamental, prejudicial error. *Id.* Here, the prosecutor referenced Ristic's undisputed initial lie about having sex with the Victim, so using "we know" falls on the inclusive side of that "fine contextual line" and was not fundamental error.

### B. Statement Summarizing Defense's Theory.

**¶45** The third comment related to the multiple confrontation calls the Victim made at the direction of the lead investigator. During closing, defense counsel criticized the lead investigator, but noted that another

11

detective, who assisted the lead investigator, "looks like she knows what she is doing." On appeal, Ristic challenges the following statement from the State's rebuttal argument:

> "[A]pparently Defense is okay with [the detective's] way of accomplishing a confrontation call and I had [the detective] go through the confrontation call process. So *I don't know* what [the lead investigator] did improperly. It was very clear [the detective] said multiple confrontation calls are done all the time." (emphasis added).

**¶46** A prosecutor may present "fair rebuttal to an area opened by defense," *State v. Gillies*, 135 Ariz. 500, 510 (1983), and argue that the State's case was not contradicted, *State v. Byrd*, 109 Ariz. 10, 11 (1972). The record shows that the prosecutor's comments permissibly criticized and rebutted Ristic's theory that multiple confrontation calls were improper, without impermissibly vouching for the State's witnesses or attacking defense counsel. *See State v. Hulsey*, 243 Ariz. 367, 390, ¶ 99 (2018) (collecting cases and stating that commentary on a defense theory is common but "[a]rgument that impugns the integrity or honesty of opposing counsel is . . . improper" (quoting *State v. Hughes*, 193 Ariz. 72, 86, ¶ 59 (1998))).

**¶47** Thus, we find no misconduct. The court's instruction to the jury that what the lawyers said was not evidence further "negated" any hypothetical error or prejudice. *State v. Morris*, 215 Ariz. 324, 336-37, ¶ 55 (2007).

## CONCLUSION

**¶48** For the foregoing reasons, we affirm.

